# Southern Railway Co. *v.* Hobbs.

*Damages for Injury to Person Crossing Track.*

(Decided May 6, 1907. 43 South. 844.)

1. *Railroads; Crossing; Injury to Person; Complaint.*—A complaint alleging that on a certain day defendant was operating a railroad between certain points and negligently ran one of its engines against a team with which plaintiff was crossing said railroad at a public crossing whereby plaintiff was injured, etc., and that all of said injuries were caused by and were the proximate result of the negligence of defendant's servants in running said engine, sufficiently states a cause of action.

2. *Pleading; Contributory Negligence; Replication; Conclusion.*—A plea asserting that plaintiff was guilty of contributory negligence which proximately contributed to his injuries is insufficient; as is a replication thereto that the failure to stop, look and listen did not proximately contribute to plaintiff's injury, both the plea and replication stating conclusions merely.

3. *Railroads; Crossing; Accident; Defense; Stop, Look and Listen.*—A replication to a plea of contributory negligence for a failure to stop, look and listen before going on a track, which alleges that plaitiff was traveling in the highway in a wagon drawn by mules and going towards the crossing, when the mules bécame unmanageable and ran on said crossing, and by reason of their becoming so unmanageable and running plaintiff could not stop, look and listen before he went on said railroad track, or near enough to be injured, is not subject to demurrer; nor is one containing the same allegation with the additional allegation that plaintiff pulled up the line and used every effort at his command to stop the team before going on the crossing, and being unable to do so could not stop, look and listen; nor is one which alleges that plaintiff could not stop, look or listen because plaintiff was in a wagon driving mules, which were unmanageable and running, and he was endeavoring to stop said team by pulling on the lines and called to said mules to stop, but could not stop or control them, wherefore, could not stop, look and listen.

4. *Same.*—To a plea alleging that plaintiff drove onto the track or sufficiently near it and sought to drive across it when the train was so near that he was bound to know and did know that he could not cross the track with his team before being struck by the engine, and that on account of his then driving on or so near the track with the knowledge of the approach of the engine he assumed the risk and could not recover, replications which do not answer such allegation of the plea or show but that it was after plaintiff had thus knowingly driven into a position of danger that the team became frightened, are demurrable.

5. *Pleading; Replication.*—Demurrers are properly overruled to replication which take issue on or present the general issue to a plea.

6. *Railroads; Crossing Accident; Evidence.*—As there was evidence showing that several trains passed that way about that time it was competent to permit plaintiff to be asked whether he heard a train whistle before leaving his home, as serving to identify the train which struck the team.

7. *Same.*—It was competent to show how close to the crossing plaintiff's team got in a slow trot before they changed their gait, as tending to show whether plaintiff drove into dangerous proximity to the railroad before his team became unmanageable, that being a material inquiry under the pleading.

8. *Same.*—It was competent to show at what point the train could have been seen if plaintiff had looked so as to determine whether he might not have avoided the collision between the team and the train at the crossing; and this under either phase of this case.

9. *Damages; Personal Injury; Evidence.*—As throwing light upon the question of damages, a plaintiff may testify whether his condition is as good as it was before the accident, and then explain in which particular it is worse; so also may a physician testify as to the remedies he used in his treatment of plaintiff, his services entering into the question of damages.

10. *Evidence; Extent of Injury.*—As going to the extent of plaintiff's injuries, the physician who attended him may testify as to the present condition of plaintiff, as to the indentation on his head and as to whether or not his headaches resulted from the wound.

11. *Railroads; Crossing Accident; Evidence.*—It is permissible to· show what kind of a whistle was blown at the whistling post; but as to whether or not the engine was brought back to the place ·of action is immaterial.

12. *Evidence; Conclusion of Fact.*—One may testify as to whether another seemed to suffer after receiving the injury for which he sues.

13. *Same; Materiality.*—No inference being permitted to be drawn against defendant for a failure to produce his fireman ·as a witness, it is immaterial as to what efforts were made to find him, it having been shown that his whereabouts were unknown.

14. *Appeal; Harmless Error.*—The witness not having answered the question but merely said it was his duty, it was harmless error to permit the witness to be asked whether the fireman on the ·engine which ran into plaintiff was subject to discharge if he failed to ring the bell.

15. *Witnesses; Impeachment; Immaterial Matter.*—A witness·may not be examined upon immaterial matter for the purpose of ·impeachment.

16. *Same; Cross Examination.*—The fact that a witness testified that he knew II. does not, on cross examination. permit a question concerning his statement to II. as that was immaterial.

17. *Same; Manner of Cross Examination; Discretion of Court.*—It is the duty of the court to protect witnesses and insist on their being treated with proper respect but much latitude is allowed in cross examination of a witness and much must be left to the .discretion of the court and unless it is abused, error cannot be predicated on it.

18. *Evidence; To Sustain Character.*—The proper method to sustain character is proof of general character, and hence, the questions as to witness' character are improper; so also are questions as to whether a witness thought the character of a witness was good or bad.

19. *Witness; Impeachment.*—The mere fact that two witnesses differ in their statement of a fact does not tend to impeach either so as to admit of testimony to sustain either's character.

20. *Evidence; Questions to Physician as to Permanency of Injury.*— As tending to show whether or not the injuries were permanent it was proper to ask the physician what he takes into consideration in making up his opinion and what will probably be the effects from the condition of the patient suffering pain and what was the condition of the patient for weeks, months or years after the injury.·

21. *Trial; Instructions Misleading; Requests for Explanation.*—The giving of a misleading charge is not error; the duty being on the other party to ask the charge explanatory thereof.

22. *Railroads; Crossing Accident; Runaway Team; Instructions.*— A charge asserting that if the jury believe that plaintiff's team was running away, and that he was doing and did all in his power to stop it from the time it began running away till it was struck by the train, and from the nature and circumstances of the place, plaintiff could not reasonably do otherwise than remain in the wagon and allow the team to go on the railroad, and the team ran away with· out fault or negligence on his part, and began running away· before

22 R

he arrived at a point where it was his duty to stop, look and listen, and the engineer saw the team so approaching the track, and did not use all reasonabel means after so seeing the team to avoid the accident, and, had he used such means, the injury to the plaintiff would have been averted or lessened, they should find for the plaintiff, is properly given.

23. *Same.*—A charge asserting that though the jury may believe from the evidence that plaintiff's team ran away and became unmanageable, he could not stop his team and listen for the train, yet if they further believe that an ordinarily prudent man, under like circumstances and conditions, would have stopped his team and looked or listened for the train at some point before the point where the team ran away and became unmanageable, then plaintiff was guilty of negligence in not stopping, looking and listening for such train at such a point and he cannot recover, asserts a correct proposition of law.

24. *Trial; Instructions; Degree of Proof.*—Charges requiring the jury to be satisfied by a preponderance of the evidence requires too high a degree of proof; as do charges requiring the jury to be convinced.

25. *Same; Submitting Questions of Conflicting Evidence.*—Where there is a conflict in the evidence as to whether or not plaintiff was guilty of contributory negligence, a charge is properly refused which asserts that, if the jury believe the evidence defendant had proven his plea, of contributory negligence.

26. *Same; Confused and Misleading Instructions.*—A charge asserting that before plaintiff can recover the jury must find that defendant was guilty of negligence, and that such negligence proximately contributed to the injuries complained of, and that plaintiff was not guilty of contributory negligence which proximately contribtued to his own injury, and if, from the evidence. the jury find that defendant is not guilty of negligence or that such negligence did not proximately contribtue to plaintiff's injury, or that plaintiff was guilty of contributory negligence, the verdict must be for defendant, is properly refused as being confused and misleading.

APPEAL from Talladega City Court.

Heard before Hon. G. K. MILLER.

Action by John M. Hobbs against the Southern Railway Company. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

Action for damages growing out of injury received by plaintiff and his property by being struck by the train at or near a railroad crossing. The complaint was as follows: "Plaintiff claims of the defendant the sum of $10,-000 as damages, for that, whereas, on, to-wit, May 19, 1902, defendant was engaged in operating and running a

railroad in Talladega, Ala., between the city of Talladega and the town of Nottingham, in said county, on and over which defendant did run its engines and cars, said engines being propelled by steam power, and said cars being pulled by said engine; and said defendant did, on, to-wit, May 19, 1902, carelessly and negligently run one of its said engines against a wagon and team of mules thereto attached, in which wagon the plaintiff then and there was crossing said railroad at a public road crossing, whereby defendant was injured, bruised, wounded, cut, and torn on his head, arms, legs and other parts of the body, his leg was broken, his arm was broken, his head was cut and bruised, and whereby he became sick, sore, and lame, and was caused to suffer great bodily pain, and was forced to lie in bed a long while, to-wit, 10 days, and was forced to remain in his house a long time, to-wit, a month, and was forced to expend a large sum of money, to-wit, $500, in and about attempting to be cured of his said injuries, and has been prevented from working and following his usual occupation, which was that of farming, and of doing any manner of work, and has become so physically disabled that he will never again be able to perform any such labor to the extent he could before such injury; and plaintiff alleges that all of said injuries were caused by the negligence and care-lessness of the servants or employes of defendant in and about the running of said engine and cars on or over said railroad, and that all of said injuries were and are the proximate result of the negligence of defendant, through its servants and employes in and about the running of said engines and cars, and the management and control thereof by him, all of which are and is to plaintiff's great damage."

The demurrers to this complaint were as follows: "It does not set forth a cause of action. It is not shown

how or in what manner the defendant owed the plaintiff any duty which it neglected or violated. It is not shown how or in what manner the alleged negligence caused or contributed to the injury complained of. It is not shown that the road crossing was such a crossing as is embrace l in the statute, nor is it averred that the defendant neglected any of the duties imposed upon it by law in approaching said crossing. The allegations of negligence are mere conclusions of the pleader, and it does not appear in what manner the defendant was negligent. For aught that appears from said complaint, plaintiff was a trespasser in crossing said road. It is not averred of what the negligence and carelessness of the servants or employes of defendant consisted, nor what are the names of said servants or employes who were so negligent and careless. It does not appear of what the damages claimed consisted."

These demurrers being overruled, the following pleas were filed: "(1) Not guilty. (2) That plaintiff was guilty of contributory negligence, which proximately contributed to the injury complained of in said complaint. (3) For that the plaintiff is guilty of contributory negligence, which proximately contributed to his own injury, in this: that he failed to stop, look, and listen before he went upon the railroad track, or near enough to the same to be injured, at the time said injury complained of occurred, and, on account of such failure to stop, look, and listen, is guilty of contributory negligence, and cannot recover."

Demurrers were interposed to the second plea, because the plea fails to allege or set forth any facts showing that plaintiff was guilty of contributory negligence, and that the plea states a mere conclusion of the pleader. This demurrer was sustained, and the plaintiff filed the following replications: "(1) Plaintiff was

traveling along the public road in a wagon drawn by two mules, and going towards the public road crossing over defendant's track, when said team became unmanageable and ran in the direction of said crossing and upon said crossing, and plaintiff, by reason of said team becoming so unmanageable and running, could not stop, look, and listen before he went upon said railroad track, or near enough to the same to be injured at the time said injury complained of occurred." The second replication is like the first, with the further allegation that plaintiff pulled up the lines and used every effort at his command to stop said team before going upon said crossing, and, being unable to do so, could not stop, look, and listen before going on said trestle. "(3) Said failure to stop, look, and listen, as set forth in the third plea, did not proximately contribute to plaintiff's injury. (4) Said failure to stop, look, and listen before plaintiff went upon the railroad track, or near enough to be injured, at the time said injury complained of occurred, was not contributory negligence on the part of plaintiff, for that plaintiff was then and there in a wagon driving two mules, which were unmanageable and running, and plaintiff was endeavoring to stop said team by pulling upon the lines and calling to said mules to stop, and could not stop or control said mules, wherefore, and on account of said mules being so unmanageable and running, plaintiff could not so stop, look, and listen."

Demurrers were filed to these replications: "(1) If it be a fact that plaintiff's team became unmanageable and ran in the direction of such railroad crossing and upon said crossing, and plaintiff, by reason of said team becoming so unmanageable and running, could not stop, look, and listen before he went upon said railroad track, or near enough to the same to be injured at the time of

said injury, this is no answer to the plea. (2) For aught that appears from said replication, the plaintiff could have stopped, looked, and listened before said team became unmanageable. (3) For aught that appears from said replication, said team became unmanageable by reason of the plaintiff's negligence in attempting to cross said railroad crossing. (4) For that it does not appear that the defendant knew or could have known that plaintiff's team was unmanageable, and that he would fail to stop, look, and listen before going upon said railroad crossing. (5) For that it does not appear that plaintiff used all the means that he could have used, or that should have been used by a man of reasonable prudence, in going upon or attempting to go upon said railroad crossing when defendant's train was approaching. (6) Said replication states mere conclusion of the pleader, and no facts are set forth to justify such conclusion. (7) Said replications are mere denials of the defendant's third plea, and do not confess and avoid the same. (8) For that said replications are indefinite and uncertain, and fail to present an issue in this: (a) It does not appear how or under what circumstances said team became unmanageable. (b) The averments that said team became unmanageable was a mere conclusion of the pleader. (c) It does not appear how far from such track said team became unmanageable. (d) It does not appear from said replication but that plaintiff's team became unmanageable from the fact that he sought to go upon such crossing after he saw or should have seen defendant's train approaching. (9) Said replication fails to show that plaintiff was prevented from looking and listening by reason of the fact that his team was running away and unmanageable."

These demurrers were overruled, and defendant filed the following plea: "(4) Defendant says it is not liable

in this action, in this: that plaintiff drove upon the track, or sufficiently near the track of defendant's railroad, and sought to drive across said track, when the train or engine of the defendant which caused the injury was so near that he was bound to know and did know that he could not cross said track with his team before being struck by said engine upon said road, and that on account of his driving upon or so near said track at such time, with the knowledge of the approach of said engine, he assumed the risk, and cannot recover in this action."

The plaintiff refiled replications 1 to 4, inclusive, to this fourth plea, and the following additional one: "(5) The plaintiff did not drive, nor seek to drive, upon or sufficiently near said railroad track in manner and form set out in said plea, and the allegations of fact contained in said plea are not true in manner and form therein alleged."

The defendant refiled the demurrers interposed to the former replications to these latter replications, and other additional grounds not necessary to be set forth. These demurrers were overruled, whereupon defendant filed rejoinders to the replication, which aver in terms that the plaintiff could have seen or heard defendant's train in time to have avoided the accident for a distance of 300 yards, where the public road parallel with the track for that distance, but, instead of stopping, looking, and listening for the train, drove along said public road so close to defendant's track that defendant's train frightened his mule and caused them to become unmanageable, running away, or that he drove the team so close to the track before he stopped, looked, and listened that the train was almost on him, and that all this was on account of the negligence of defendant.

These rejoinders are not set out fully, but are based upon the allegations above set out, and were, on motion

of the plaintiff, stricken from the file, and this action of the court is made the basis of assignments 11, 12, and 13, subdivided into assignments J, K, L, and M. The seventeenth assignment of error is that the court erred in overruling defendant's objection to the question to plaintiff, "State whether or not you saw or heard any train pass the Dickinson place while you were at dinner at home." Assignments 18 and 18 1-2 are sufficiently set out in the opinion. The other assignments of error are sufficiently set out in the opinion down to assignment 37.

Assignments 37, 38, 39, and 40 relate to the manner in which plaintiff was allowed to cross-examine witness McClerkin, which is in the following language: "Q. I did not ask you that, did I? A. No, sir. Q. What made you answer that you could see through it all right? What made you want to tell me you could see through it and are you trying to help the railroads in this case?" And to the witness Hallman: "So you refuse to answer it in any other way, do you?"

Assignments 41, 42, 46, 47, 48, 49, 49 1-2, and 50 are based upon the refusal of the court to sustain defendant's objection to certain questions concerning plaintiff's character, not based on witness' knowledge of the defendant's general character, and as to what witness thought of the character of Dickinson and other witnesses in the case.

The question referred to, as to Dr. Bishop, in assignment 43, is as follows: "I will ask you as a physician, in making up an opinion as to the permanency or not of injuries of this character, whether or not you take into consideration the condition of the patient for weeks and months, and even years, after the accident?" And the question to the same witness, in assignment 45: "If Mr. Hobbs, on account of that injury, if his back pains or

troubles him owing to this injury all the time, or to such
an extent that he cannot do work he was formerly ac-
customed to do, such as blacksmithing and plowing,
would or would not that pain Mr. Hobbs' back, and be-
ing so he could not work or plow on account of it, and
taking into consideration that swelling you spoke of
before, and that pain being there to this day, would or
would not that indicate permanent injury to the kid-
neys?"

The following charges were given at the request of the
plaintiff: "(5) The court charges the jury that it is not
necessary to stop and look and listen before crossing a
railroad track on a public highway under all circum-
stances. One need not look when to do so would not en-
able him to see approaching danger from a coming train,
nor need he stop, if he, without fault or negligence on
his part, cannot stop at a point where he otherwise
should stop. Nor need he listen, if to hear would do no
good, nor enable him to escape the danger. (6) The
court charges the jury that, if they believe from the
evidence that the plaintiff's team was running away,
and plaintiff was doing and did do all in his power to
stop them from the time they began running away until
they were struck by the train, and from the nature and
circumstances of the place the plaintiff could not reason-
ably do otherwise than allow the team to go upon the
railroad track, and could not reasonably do otherwise
than remain in the wagon, and that the mules ran away
without fault or negligence on his part, and that they
began running away before plaintiff arrived at a point
where it was his duty to stop, look, and listen, and that
the engineer on the train saw the team so approaching
the track, and did not use all reasonable means after so
seeing the team to avoid the injury, and that, had he
used such means, the injury to the plaintiff would have

been averted or lessened, then they must find for the plaintiff. * * * (9) The court charges the jury that it was the duty of the engineer, Weaver, to blow the whistle or ring the bell of the locomotive at least one-fourth of a mile before reaching the crossing where the injury to plaintiff occurred, and also his duty to continue to blow the whistle or ring the bell at short intervals until it had passed such crossing, and that in this suit the burden of proof is on the defendant to show that he did so, and that to remove such burden, it is incumbent upon the defendant to reasonably satisfy the jury by a preponderance of the evidence in this case. * * * (11) The court charges the jury that, in order to establish its pleas of contributory negligence, the burden is on the defendant, and that that burden is not removed until the pleas are proved to the reasonable satisfaction of the jury, and of every juryman, and by a preponderance of the testimony."

Defendant requested the following charges, which were refused: "(17) The court charges the jury that you cannot find a verdict for the plaintiff in this case unless he has convinced you by a preponderance of the testimony that, on account of his team running away and becoming unmanageable, he could not stop the team and listen for the train before going on the crossing. * * * (22) The court charges the jury that, if you believe the evidence in this case, the plaintiff was guilty of negligence in attempting to cross the track of the defendant without first stopping and listening to see if any train was approaching; and you cannot find a verdict in his favor unless he has convinced you by a preponderance of the evidence that his failure to stop, look, and listen was caused by his team running away and becoming unmanageable. * * * (33) The court charges the jury that if you believe from the evidence in this case

that the plaintiff's team ran away and became unmanageable some distance before he reached the railroad crossing where he received his injuries, and on account of this fact, while his team was running away and was unmanageable, he could not stop his team and listen for the train, yet if you further believe that an ordinarily prudent man, under like circumstances and conditions, would have stopped his team and looked or listened for the train at some point before the point where the team ran away and became unmanageable, then the plaintiff was guilty of negligence in not stopping and listening for such train at such point, and cannot recover in this suit. * * * (36) The court charges the jury that, if you believe the evidence in this case, the defendant has proven his plea of contributory negligence. * * * (49) The court charges the jury, before the plaintiff can recover, the jury must find from the evidence that the defendant was guilty of negligence and that such negligence proximately contributed to the injuries complained of, and that the plaintiff was not guilty of contributory negligence which proximately contributed to his own injury; and if from the evidence the jury should find that the defendant was not guilty of negligence, or that such negligence did not proximately contribute to the plaintiff's injury, or that the plaintiff was guilty of contributory negligence, your verdict must be for the defendant."

There was verdict and judgment for the plaintiff in the sum of $3,375, and defendant appeals.

KNOX, DIXON & BURR, for appellant.—The briefs did not reach the Reporter.

BROWN, McELDERY & HARRISON and WHITSON & DRYER, for appellee.—The briefs did not reach the Reporter.

SIMPSON, J.—This is an action for damages on account of injuries received from the running of the train against plaintiff's wagon and team at a public road crossing.

1. The demurrer to the complaint, referred to in the first and second assignments of error, was properly overruled, as the complaint sufficiently states a cause of action under our decisions.

2. The demurrers to the second plea of defendant were properly sustained (third and fourth assignments).—*L. & N. R. R. Co. v. Markee,* 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21; *Railroad Company v. Bromberg,* 141 Ala. 258, 37 South. 395.

3. The demurrers to the replications to the third plea were properly overruled, except that to the third replication, which should have been sustained, as that replication merely stated the general conclusion of the pleader, and did not state any facts.—18 Ency. Pl. & Pr. pp. 654-656.

4. The demurrers to the replications to the third plea, which were refiled to the fourth plea, should have been sustained, for the reason that said replications do not in any way answer the allegation in said plea that plaintiff "drove upon the track, or sufficiently near the track,  * * * and sought to drive across said track, when the train or engine  * * * was so near that he was bound to know and did know that he could not cross said track  * * * before being struck by said engine." It does not appear but that these allegations of the plea were true, and that it was after plaintiff had thus knowingly driven into a position of danger that the team became frightened. In addition it may be said that the replications, at any rate, simply show that the injury occurred from an inevitable accident, to-wit, from the team's becoming frightened.

5.   The demurrers to the fifth and sixth replications to the fourth plea were properly overruled, as these replications simply presented the general issue to said plea.

6.   Eleventh, twelfth, and thirteenth assignments (J, K, L, and M) :   The court erred in sustaining the motion of plaintiff to strike from the files rejoinders 1, 2, 3, and 4, which were not unnecessarily prolix. irrelevant, or frivolous.—Code 1896, § 3286; 5 Mayfield's Dig. pp. 762, 763, No. 33; 18 Ency. Pl. & Pr. p. 72.

7.   Assignment 17 :   The objection to the question to the plaintiff, as to whether he heard a train whistle before leaving his home, was properly overruled, as there was testimony tending to show that several trains passed about that time, and this might serve to identify the train which struck plaintiff's team, or with which his team collided.

8.   Assignments 18 and 18 1-2 :   The objection to the question to the plaintiff, "How close to the crossing did your team get, in a slow trot, before they changed their gait?" was properly overruled, as this was a material circumstance tending to show whether the plaintiff drove into dangerous proximity to the railroad before his team became frightened and unmanageable.

9.   There was no error in overruling the objection to that part of the answer to the foregoing question : "They seemed to become frightened."

10.   Assignment 19 :   The objection to the question as to how far the train could be seen at a position 50 yards from the railroad was properly overruled.—*E. T., V. & G. R. R. Co. v. Watson,* 90 Ala. 41, 7 South. 813.   The theory of the plaintiff was that his team became frightened and unmanageable, and that of the defendant was that the team never did become unmanageable, but were deliberately and carelessly driven to the railroad track

without the necessary precautions. In either phase of the testimony, it was proper to show at what points the train could have been seen, if the plaintiff had "looked," so as to determine whether he might not have avoided the accident.

11. Assignments 20, 21, 22, and 23 (and pacticularly 21), insisted on in argument: There was no error in allowing the witness to state whether his condition was as good as it had been before the accident, and then allowing him to explain in what particulars it was worse. While it is true that a man who is not a physician cannot describe technically his physical condition, yet he can describe it generally, and knows better than any one else whether he is sick or well, is lame, or has the use of all his members.

12. Twenty-fourth assignment: The error of admitting the question to Dr. Bishop as to whether there were any other railroad officials there was cured by the fact that the answer was not injurious to the defendant.

13. Twenty-fifth, twenty-sixth, and twenty-seventh assignments: The court committed no error in overruling the objection to the questions to Dr. Bishop as to what remedies he used in the treatment of the plaintiff. In the case of *Southern Ry. Co. v. Bunnell,* 138 Ala. 247, 36 South. 380, the witness was not a physician, and the court stresses the fact that "the plaintiff paid nothing for the remedies, and their value did not enter into the question of damages." In this case the value of the services of the physician does enter into the question of damages.

14. Assignments 28 and 29: There was no error in allowing the physician to testify as to the present condition of the plaintiff, as to the indentation on his head, and as to whether his headaches resulted from the wound, as these matters are proper to go before the jury

in estimating the extent of the injury suffered by the plaintiff.

15. Assignment 30: The question to the witness Barclay, and the answer thereto, as to what kind of whistle was blown at the whistling post, according to the opinion of the majority of the court, were properly admitted, though in the opinion of the writer and of Justices DOWDELL and ANDERSON the same should have been excluded, because the witness was not shown to have any knowledge as to what kind of whistle was usually blown as the whistle post, and, at any rate, it was immaterial. The statute simply requires the whistle to be blown or the bell rung before reaching any public road crossing or a regular station; and if the whistle is blown in any particular way, or any special number of times, it is simply a regulation of the business of the railway company for the information of its employes.

16. Assignment 31: The question as to whether the engine was brought back to the place of the accident was immaterial to the issue involved in this case, and should have been excluded.

17. Assignments 32 and 33: The questions to the witness Beard and the answers thereto were properly admitted, and they simply showed the condition of the plaintiff after he received the injury, and the kind of attendance which he required, the cost of which was an element of damage. As to whether he seemed to suffer, that also was proper, in accordance with the decisions of this court.—*McLendon's Case,* 63 Ala. 266; *Burney v. Torrey,* 100 Ala. 157, 174, 14 South. 685, 46 Am. St. Rep. 33; *Burton v. State,* 107 Ala. 108, 126, 18 South. 284.

18. Assignment 34: There was no error in the refusal by the court to allow the witness Weaver to be questioned as to what efforts he had made to find the

fireman. He had already testified that he did not know where he was, and it was immaterial whether the wit-ness had or had not made any effort to find out where he was. No inference could be drawn against the defendant for not producing him, at any rate.—*Mann v. State,* 134 Ala. 1, 20, 32 South. 704.

19. Assignment 35: The error in allowing the witness Weaver to testify as to whether the fireman was subject to discharge if he failed to ring the bell was without injury, as the witness did not answer the question, but merely said, "It was his duty."

20. Assignments 36 and 44: The court erred in over-ruling the objections to the questions to the witness Mc-Clerkin with regard to his statement to John Hobbs. It is not competent to examine a witness on immaterial matter for the purpose of impeaching him. It cannot be said that the defendant opened the door for the intro-duction of this evidence by bringing out evidence in the examination in chief to which this would be a rebuttal, for all that was said in the examination in chief was that the witness at the time of the trial knew Hobbs.

21. Assignments 37, 38, 39, and 40: While it is the duty of the court to protect the witness and to insist on his being treated with the proper respect by counsel, yet in view of the latitude allowed in cross-examination, and of the fact that the demeanor of the witness is before the court, much must be left to the discretion of the court; and, while this court does not wish to be understood as approving the character of examination as shown by the record under these assignments, yet we cannot say that the court erred in allowing the questions.—*In re Carmichael,* 36 Ala. 514, 524.

22. Assignments 41, 42, 46, 47, 48, 49, 49 1-2, and 50: The court erred in allowing several of the questions to the witnesses, for the purpose of sustaining the char-

acter of the witness Dickinson. In addition to the fact that the questions were not in proper form, as they asked, as to his "character," in place of his "general character," one was objectionable because it asked of the witness whether he "thought" the character of Dickinson was good or bad.—30 Am. & Eng. Ency. Law, pp. 1076, 1077; *McClellan v. State*, 117 Ala. 140, 145, 23 South. 653.

23. With regard to the questions seeking to sustain the witness Hallman, the court properly excluded them, partly for the reasons last mentioned, and for the further reason that said witness had not been impeached. The mere fact that two witnesses differ in their statements as to any fact does not tend to impeach either.— *Owens v. White*, 28 Ala. 473; *Birmingham Ry., etc., Co. v. Ellard*, 135 Ala. 433, 450, 33 South. 276.

24. There was no error in allowing the questions to Dr. Bishop referred to in assignments 43 and 45.

25. Charge 5, given on request of the plaintiff, was probably misleading, and not altogether warranted by the facts in this case; but if the defendant had desired an explanation, or any other charge to relieve its misleading tendency, he could have asked for other charges. Consequently the court cannot be placed in error for giving it.

26. There was no error in giving charge 6, requested by plaintiff.

27. Charges 9 and 11, requested by plaintiff and given by the court, imposed too high a duty by requiring the jury to be satisfied by a preponderance of the evidence.—*Carter v. Fulgham*, 134 Ala. 238, 243, 32 South. 684; *Arndt v. City of Cullman*, 132 Ala. 541, 552, 31 South. 478, 90 Am. St. Rep. 922.

28. Charges 17 and 22, requested by the defendant, were properly refused, because they exacted too high a degree of proof, inasmuch as they required the jury to be

23 R

"convinced," in place of being "reasonably satisfied."—*So. Ry. Co. v. Riddle,* 126 Ala. 244, 247, 28 South. 422; *Moore v. Heineke,* 119 Ala. 627, 639, 24 South. 374; *Torrey v. Burney,* 113 Ala. 496, 504, 21 South. 348.

29. The court erred in refusing to give charge 33, requested by the defendant, which asserts a correct principle of law. This charge is not identical with charge 34, given on the request of defendant. The defendant had a right to have the charge hypothesized on the facts.

30. Charge 36, requested by the defendant, was properly refused. As to whether or not the plaintiff was guilty of contributory negligence would depend upon facts as to which there is conflict in the evidence.

31. The court properly refused to give charge 49, requested by the defendant. It was misleading and confusing. There was no error in the refusal to give the general charge in favor of the defendant, particularly as the evidence afforded a presumption that the fireman may have seen the plaintiff when his horses were running and neglected to use the means to check or stop the train. As the result of what has been said is that the case must be reversed, and application for a rehearing is denied, and the judgment of the court is reversed, and the cause is remanded.

Reversed and remanded.

TYSON, C. J., and HAALSON, DENSON, and McCLELLAN, JJ., concur. DOWDELL, SIMPSON, and ANDERSON, JJ., dissent in part.