(122 So. 322)

## TORRANCE v. WELLS.   (6 DIV. 140.)

Supreme Court of Alabama.   March 21, 1929.

Rehearing Denied May 23, 1929.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

GARDNER, J. Plaintiff, a boy nine years of age, on July 9, 1926, suffered a compound fracture at the wrist of the right hand, the bone protruding and exposed, coming in contact with the earth as he fell from a tree. He was carried at once to a hospital in Birmingham, and defendant, a physician and surgeon of that city of many years' experience in the practice, was employed by the boy's father to attend the case. That the boy's right arm is permanently impaired in usefulness and permanently disfigured as a result of the accident is well established. He insists this unfortunate result was due to negligent treatment of the case by the surgeon and instituted this suit to recover damages therefor. There was verdict and judgment for the plaintiff, from which defendant prosecutes this appeal.

The case was tried on the plea of the general issue to count A, the only count submitted to the jury, and it is urged that defendant should have been given the affirmative charge in his favor as duly requested. Count A charged that the defendant for a reward undertook to treat plaintiff's injuries, and so negligently conducted himself in treating the same that as a proximate consequence of such negligence plaintiff's arm and hand were permanently impaired and disfigured.

Plaintiff did not attempt in his proof to establish negligence or lack of skill in the first or initial treatment, but his proof tended to show a negligence in the subsequent treatment of the wound in failing to dress the same with sufficient frequency, and to apply or have applied antiseptics with due regularity, or to provide ample drainage for the free discharge therefrom. Plaintiff offered proof of physicians as well as extracts from recognized text-books that, in dealing with a compound fracture of the character here in question, the physician should immediately suspect infection and must treat it as an infected wound, and if not so treated it is not being given proper attention; and that proper treatment would require that the wound be dressed every day and antiseptics applied every few hours as well also proper drainage provided.

Plaintiff's wound was cleansed and the bones set on Friday evening, July 9th. He remained at the hospital six days, leaving for home the following Thursday. He testifies that during the six days at the hospital the dressing was removed three times, and that nothing was done to his hand the day following the setting of the bones, which was Sat-

urday, and that on Sunday the hospital physician removed the dressing, but he did not see defendant; that the hospital physician removed it again on Monday, and no one took it off Tuesday, but on Wednesday defendant dressed the hand for the only time after the bones were set. Plaintiff's evidence further tended to show that antiseptics were never applied more than one time during a day, and that on Thursday when he left the hospital no one dressed the wound. The chart showed the boy had normal temperature upon entering the hospital; that during the first night it rose to 100, and by Saturday evening it had reached 104, and there was evidence tending to show he was then delirious. This condition, according to one of the physicians testifying, called for inspection of the fingers and hand and a change of dressing. There was further evidence to the effect that the damage from infection may be done in two or three days. Some two or three witnesses, who were in the hospital at the same time with plaintiff, corroborated his theory of the case.

There was also evidence to the effect that upon reaching home from the hospital it was discovered that plaintiff's hand and arm to the elbow were dark and swollen and the fingers stiff, and a most offensive odor coming from the wound, which lasted several days. The family physician began daily treatments at that time, and he testifies that plaintiff's arm was in bad shape, and the wound was infected, "it was suppurating," with pus coming from it. This witness further stated that plaintiff's arm was "unjointed, separated at the joint and the serous surface was exposed. The effect of infection on the ends of this bone destroyed the surface, * * * and there was no chance to get them united after that to prevent stiffness." As to the tendons that control the movement of the fingers, the evidence shows that the surface would be destroyed by the pus, and when the wound healed these tendons would mass together and lose their effectiveness.

The father of the plaintiff testified that defendant on Wednesday, the 14th, told him he might take the boy home, and upon being asked about having the hand dressed, defendant replied "that it wouldn't need such dressing," and with that understanding he took the boy home. Plaintiff offered proof in corroboration of this conversation, and also to the effect that it was not proper that he should leave the hospital in that condition.

There was some evidence tending also to show the wound was too closely bandaged and free drainage not permitted. The physicians agree that prompt dressing of the wound and frequent application of antiseptics retard the growth of the infection, and, indeed, defendant himself states the wound should have been dressed each day, which, however, he insists was done.

There was sharp conflict in the evidence, that for defendant tending to show proper care and attention was given by himself personally, and a denial on his part as to the occurrence testified to by the father upon the boy leaving the hospital. After plaintiff's return home, defendant continued to treat the wound by dressing it on Sundays at his office, and plaintiff's evidence was to the effect that on one of these visits defendant placed his bare hand in the wound and "snatched off part of the bone with his finger nails," and that such was improper treatment. Defendant denied this occurrence, and further insists the jury should have been instructed against its consideration; the contention largely resting upon the theory the evidence shows this could not have increased the infection. True the physician interrogated as to this stated, "I hardly think that in itself would cause a spread of infection to any other part," but qualified the statement at once by saying that if a blood vessel was opened "it could spread that way." Plaintiff's evidence tended to show that at the time of this occurrence the wound was made to bleed. We are persuaded this was a matter for the jury's consideration.

Charge 28, requested by defendant, was refused without error.

The rule of law applicable here is well established, and presents no matter of controversy. "There is no requirement of law that defendant should have been infallible in diagnosis or treatment of plaintiff's trouble. A physician or surgeon undertakes to exercise at least ordinary diligence and skill in the treatment of his patient—such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily exercise in like cases. * * * He cannot be held, in the absence of express agreement, to have warranted a cure, and, if he exercises reasonable care and skill, is not liable for an error of judgment in diagnosis or treatment, where the proper course is subject to reasonable doubt. * * * A showing that an unfortunate result has followed does not shift the burden of proof. The complaining patient must still show negligence in diagnosis or treatment." Carraway v. Graham (Ala. Sup.) 118 So. 807.[1] The doctrine of res ipsa loquitur does not apply to the mere fact of a blood infection, however closely, in temporal sequence, it may follow a medical treatment. Moore v. Smith, 215 Ala 592, 111 So. 918.

It is apparent from the evidence that plaintiff rested his case, not upon a lack of skill on defendant's part, but rather upon neglect of his case, a lack of ordinary diligence and reasonable care. True, seed of infection were doubtless in the wound by

---

[1] 218 Ala. 453.

reason of its exposure at the time of the accident, but all agree it should have been promptly treated as an infected case, whether infection actually was discernible or not, and, indeed, defendant concedes as much, but insists that proper attention was given to the wound.

Defendant insists the evidence is insufficient to show that such lack of attention and care produced the unfortunate result, and that in some instances like results follow notwithstanding due care, but it appears that ordinarily prompt treatment as outlined should have been given to retard, and inhibit the growth of the infection, and reasoning from cause to effect the jury would be authorized to infer the result was proximately produced by the neglect.

We are persuaded, a consideration of the evidence as herein indicated suffices to demonstrate that the case was one for the jury and that the affirmative charge requested by defendant was properly refused.

■ We may here state also our conclusion that the insistence of defendant the motion for new trial should have been granted, upon the ground the verdict was contrary to the great weight of the evidence, is without merit. As we have hereinbefore stated, the evidence was in sharp conflict, and plaintiff's theory of the case was supported by much corroborative proof. There is no insistence the verdict was excessive, and no indication of improper argument or appeal to prejudice. The rule controlling upon questions of this character, stated in Cobb v. Malone, 91 Ala. 388, 8 So. 693, is well recognized and needs no repetition here. Guided by that rule, we are of the opinion the case was one peculiarly for the jury's determination, and that the action of the court in this regard should not be here disturbed.

■ Defendant further urges the grounds of the motion for new trial rested upon certain charges given at his request, as to which he insists the verdict of the jury was contrary thereto. We do not entertain the opinion the verdict was contrary to these instructions. As to given charge 19, there was evidence tending to show that if prompt and efficient means had been resorted to, the infection may have been inhibited or its spread prevented, and that a lack of proper attention could result in irreparable damage in the course of two or three days.

It was not insisted defendant was responsible for any initial infection in plaintiff's arm. Charge 20, ground 14 of the motion.

The charge, the basis of ground 30 of the motion, properly construed, was in substance and effect the same as the charge constituting ground 32 of the motion. We think the jury understood each of these charges to in fact have reference to a spread of the infection, and not any initial infection produced as a result of the nature of the wound and the exposure to the dirt, for as to such initial infection they had just been instructed by charge 20 no liability could be rested on defendant.

■ Considering charges refused to defendant, we think what has been said as to the refusal of the affirmative charge suffices as a justification for the refusal also of charges 4, 11, and 13, constituting assignments of error 23, 24, and 26. Defendant continued to treat plaintiff after leaving the hospital on Sundays at his office. Plaintiff was still his patient under treatment and charge 12, as-. signment of error 25, was properly refused.

■ Plaintiff's evidence did not tend to show any lack of skill or care on defendant's part in setting the bones or in the operation when plaintiff was brought to the hospital and first under his care, but, as previously stated, his case rests upon alleged subsequent neglect. There was no error in refusing the charges constituting assignments 27 and 28, as the same were abstract.

■ We have noted heretofore a tendency of the evidence to show plaintiff's arm was too tightly dressed or wrapped, and the charge, the basis of assignment 29, needs no discussion. We have also previously expressed our view as to the refusal of the charge complained of in the thirtieth assignment.

■■ The charge, refusal of which constitutes assignment of error 32, instructed the jury against any recovery on account of plaintiff's being discharged from the hospital too early. The charge was misleading, as it omitted a consideration of instructions which plaintiff insists were given by defendant to the effect that the hand would not need much dressing, in connection with the further proof of considerable infection and inflammation, and that his removal under these circumstances was ill advised. This constituted a circumstance as a part of defendant's treatment to be considered by the jury in connection with all the evidence in the case.

■ The questions remaining for consideration relate to rulings on evidence, which will be briefly reviewed. Dr. Young, witness for plaintiff, was duly qualified as an expert, and there was evidence tending to show the facts hypothesized in the question, the subject-matter of the third assignment of error. The argument seems to be that it was a matter of common observation, and not for experts; but we think the witness from his years of experience was properly permitted to answer that from these facts it was his opinion the putrid odor from the wound was not sudden, but indicated a gradual growth of infection or pus. We think it equally clear that this witness be allowed to state the proper treatment under such conditions. The questions assumed no facts that were not supported by tendencies of the evidence, and to

disallow such proof would in effect forestall plaintiff in showing any improper treatment. From the evidence as to the condition of plaintiff's wound, the swelling, discoloration, and odor, we conclude the jury could infer there were "sacks or places" therein containing pus that needed elimination, and that the question complained of in assignment No. 6 was not improper. Moreover, Dr. Young had previously stated, without objection, that a closed wound where suppuration was developing "should be freely opened and every pocket drained." The question merely in substance called for a repetition of this proof. The sixth assignment presents no reversible error.

Nor was there error in permitting this witness to answer that it was not customary or proper to put unsterilized fingers into a wound. Much of the argument addressed to this assignment has been considered heretofore in passing upon refused charge 28, and needs no further discussion.

There was proof tending to show the facts hypothesized in the question, the basis of the eighth and ninth assignment, and we see no sound objection to permitting plaintiff to ask this physician whether or not under those facts plaintiff should have been properly allowed to go home with instructions that his arm "wouldn't need much dressing."

Assignments 10 to 13 embrace questions which so clearly came within the range of expert opinion as to call for no discussion here. Nor was there error in excluding the statement of defendant, after testifying what was done during the operation, that "we felt safe about that." His evidence had disclosed a proper operation and safeguards taken, and how he "felt" in regard to the matter was not a subject of relevant inquiry.

While we recognize the range of cross-examination of a witness has its limitations, yet the rule is long recognized in this state that "much must be left to the enlightened discretion of the presiding judge." Winter v. Burt, 31 Ala. 33; Southern R. Co. v. Hobbs, 151 Ala. 335, 43 So. 844.

The fifteenth assignment presents no reversible error. The jury well knew defendant had heard these witnesses testify to the contrary of his testimony, and the question merely called for a statement of an obvious fact. While it may well have been sustained, yet we think the ruling was one within the discretion of the trial court.

We have examined the authorities cited by appellant, among them Tarver v. State, 9 Ala. App. 17, 64 So. 161; Malone v. State, 16 Ala. App. 185, 76 So. 469; May v. State, 16 Ala. App. 541, 79 So. 677, but find nothing in these cases persuasive to a contrary result.

On cross-examination of defendant, plaintiff identified a bill for $100 for services due in treating plaintiff, and a letter written by defendant to plaintiff's father inclosing the same. The letter contained only a recital of the inclosure of the bill for $100 for services rendered during the year 1926, and nothing more. Defendant insists (assignments 16 and 17) this was prejudicial and that his objection thereto should have been sustained. Count A charged that defendant undertook this treatment for a reward, and plaintiff's father had testified without objection, that in June, 1927, he went to see defendant about the bill, and he told him it would be $50, but subsequently sent it for $100. The bill and letter being identified by defendant on cross-examination, the court permitted their introduction. The bare fact the letter bore a date subsequent to the suit would not suffice for error. It nowhere appears that this was a matter in any manner brought to the jury's attention, and it finds no comment by counsel in argument, as the same appears here in full, and very clearly there is nothing in the amount of the bill capable of prejudicial use. While it was cumulative and the court would have committed no error in their exclusion, yet we are unable to see that reversible error can be rested upon their admission.

Appellant strenuously insists reversible error is shown in the action of the court in overruling defendant's objection to the following question propounded to defendant by plaintiff on cross-examination: "You didn't try to operate on him to help him, did you?" It appears from the proof that upon the wound healing, plaintiff's father in October, 1926, carried him to Dr. Hoke of Atlanta, Ga., for treatment for relief against the impaired condition of plaintiff's arm, but in so testifying made no statement as to any one recommending that particular surgeon. Dr. Hoke's treatment began in June, 1927, it seems, culminating in an operation in September following. It appears from an examination of his testimony that defendant himself on his direct examination first mentioned the matter of recommending Dr. Hoke to plaintiff's father, adding: "I thought Hoke was the best man in the South." We think this voluntary statement of an immaterial matter may be properly construed as intended to create a favorable impression with the jury that defendant was on the alert for the interest of the patient. Plaintiff's evidence throughout tended to show indifference to and a neglect of the case resulting in serious impairment to his arm. It is in the light of this situation that the question on cross-examination is to be viewed as by way of rebuttal of that which defendant himself had introduced into the case. If defendant considered the question prejudicial, he might in his answer have offered explanation and probably removed any adverse inferences; but this was not done, and he rested content with a single negative response.

In view of the situation and the wide

latitude allowed on cross-examination, we are unwilling to hold there has here been shown an abuse of discretion by the trial court. We do not consider the cases cited by appellant (B'ham Electric Co. v. Mealing, 214 Ala. 597, 108 So. 511; Hackney v. Dudley, 216 Ala. 400, 113 So. 401; Johns Undertaking Co. v. Hess, etc., Co., 213 Ala. 78, 104 So. 250) militate against this conclusion.

We have considered the various assignments of error argued by counsel for appellant, and find nothing calling for a reversal of the cause.

It results, therefore, that the judgment must be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

