[Burns v. Louisville & Nashville Railroad Company.]

a compliance. Such loss falls upon him when no other objection can be made."—Rorer on Judicial Sales, § 151; *Vance v. Foster*, 9 Bush. (Ky.) 389.

Our own court, touching the same matter, says: "These sales are not complete,—are *in fieri*,—until confirmation; subject to be vacated by the court, though the confirmation, when made, relates back to the day of sale, and the purchaser's rights then attach. He is regarded as the owner, from the day of his purchase; bearing the loss, if the thing sold perishes, or deteriorates in value, and entitled to any appreciation in value, or accretions to the thing, during the time necessarily intervening between the sale and the confirmation. From the day of purchase, until the decree of confirmation, the purchaser becomes a *quasi* party to the cause in which the decree of sale was rendered, subject, as such, to the decrees and orders the court may render in reference to the sale, its vacation, or confirmation."—*Haralson v. George*, 56 Ala. 297.

It thus appears that this court is in line with the doctrine stated by Rorer, and by the decisions of other courts, holding to the same view, from which we are disinclined to depart.

Affirmed.

# Burns *v.* Louisville & Nashville Railroad Company.

*Action against Railroad Company to recover Damages for Personal Injuries.*

1. *Contributory negligence; duty of person approaching track of railway.*—It is the duty of a person approaching the tracks of a railway for the purpose of crossing it, to stop and look, and if necessary, to listen for approaching trains; and where there is an omission of this duty, followed by injuries re-

[Burns v. Louisville & Nashville Railroad Company.]

sulting from a collision with a train or locomotive or car, while attempting to cross over the track, the person so injured and so failing to discharge the duty resting upon him, is, as a matter of law, guilty of contributory negligence which precludes his recovery of damages in an action which counts upon the simple negligence of the railroad company or its employes.

2. *Same; same.*—Where a person approaches a railroad track for the purpose of crossing over it, his duty to stop and look and listen must be performed while the person is so near to the track and so immediately preceding his effort to cross over the track, as to remove any danger from a train coming upon the crossing between the time he stopped, looked and listened and his attempt to proceed across the track; and though he stopped at the track, if he lingers there after looking and listening until a train not in hearing or sight when he stopped, looked and listened, has, in the meantime, come upon the scene and collides with him when he does attempt to cross, he is guilty of contributory negligence.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellant, Robert A. Burns, against the Louisville & Nashville Railroad Company, to recover damages for personal injuries alleged, to have been sustained by the plaintiff by reason of the negligence of the defendant's employes.

There is but one assignment of error which is predicated upon the court's giving a written charge at the request of the defendant, to the giving of which charge the plaintiff duly excepted; and the facts necessary to an understanding of the decision on the present appeal in reference to this charge are sufficiently set forth in the opinion.

There were verdict and judgment for the defendant, and from this judgment the plaintiff appeals.

W. H. DENSON, for appellant.—It was open to the jury on the whole evidence to find that the exercise of due care by the defendant would have avoided the injury.—*Martin's case,* 131 Ala. 269; *Foshee's case,* 125

Ala. 217; *Lamb's case,* 124 Ala. 176; *Ives' case,* 144 U. S. 408; *Hilz's case,* 13 S. W. Rep. 951; 2 Thompson on Law of Neg. (late ed.), §§ 1598, 1742, 1748.

WALKER, TILLMAN, CAMPBELL & WALKER and W. I GRUBB, *contra,* cited *Central of Ga. R. R. Co. v. Forshee,* 125 Ala. 199.

DOWDELL, J.—This is an action to recover damages for personal injuries received by the plaintiff while attempting to cross the track of the defendant railroad company at a public street crossing within the corporate limits of the city of Birmingham. The complaint contained four counts, two of which counted on simple negligence and two on wanton or intentional wrong. The latter two, however, being the second and fourth counts, were before the conclusion of the trial withdrawn by the plaintiff. The pleas to the remaining two counts, being counts on simple negligence, were the general issue and contributory negligence. On these pleas issue was taken and the trial had. There is but one assignment of error, and that is the giving of the following written charge requested by the defendant: "If the jury believe from the evidence that the plaintiff was injured at Avenue E in crossing the defendant's railroad, and if the jury further believe that there were no cars at the time of his injury on the southbound track, and the train that struck plaintiff was approaching on the northbound track, the plaintiff was guilty of contributory negligence and cannot recover in this action."

That there was evidence tending to support every fact hypothesized in the charge is clearly shown by the record. The only question, therefore, presented for consideration, is whether the facts hypothesized, when taken in connection with other undisputed evidence in the case, were sufficient to authorize the court upon the written request of the defendant, to charge as matter of law, that the plaintiff was guilty of negligence, which contributed proximately to his injury. The crossing at which plain-

[Burns v. Louisville & Nashville Railroad Company.]

tiff claimed that he was struck and injured by the passing train of the defendant company, was at Avenue E. The undisputed evidence shows, that at this place there were four tracks of the defendant's railroad which crossed the avenue. The tracks all ran in a northerly and southerly direction. The two easterly tracks were the main lines of the defendant's road, and the two westerly, were side tracks where cars were stored. The track furthest east was the "northbound" main line track, and the track next to it west was the "southbound" main line track. All of the four tracks at this crossing ran parallel with each other. The plaintiff was crossing the tracks on foot from west to east. The distance from the east rail to the first side track going from east to west, to the west rail of the "northbound" main line track was 17.2 feet, and the distance from the east rail of the "southbound" main line track to the west rail of the "northbound" track was 9.6 feet. Cars were stored on the side tracks which came up to the crossing, leaving a space sufficient for vehicles to pass between them in making the crossing. These cars obstructed the view, so that one going across from west to east could not see an approaching train from the south, coming from the direction of Montgomery and going north into Birmingham, until he had cleared the east side track. After clearing the tracks upon which the cars were stored, the view of the "southbound" and "northbound" main line tracks was open and unobstructed in southerly direction towards Montgomery 900 feet, and in a northerly direction towards Birmingham 1,000 feet. The plaintiff's testimony is that he stopped in the middle of the easterly side track and looked and listened, but that his view to the south was obstructed at this point by the stored cars, that from this point he went three or four steps looking the while in front of him, when he stopped the second time within eighteen inches of the rail of the track on which the train was that struck him, and looked towards Birmingham, and before he could look in the opposite direction, he was struck by the pilot beam of a locomotive coming from

the direction of Montgomery and northbound. The plaintiff was not deficient in his sight or hearing, and the accident occurred in open daylight. The plaintiff testified that he was familiar with the pilot beam of locomotives and knew that they extended over the track from fifteen to thirty inches, according to the size of the locomotive. On the facts hypothesized in the charge, the train that struck the plaintiff was on the "northbound" track, which was the track furthest east, and there were no cars on the "southbound" main track. From this, on the undisputed evidence, the plaintiff passed over an intervening space of fifteen feet from the point where he first stopped, to the point where he last stopped and was struck, in which his view of the track on which the train was approaching was open and unobstructed for a distance of nine hundred feet in one direction, and a thousand feet in the other. His failure to stop at a point of safety within this space, and to look and listen before attempting to cross, or placing himself in dangerous proximity, so near to the track as to be struck by a passing train, was *per se* negligent, and may be so affirmed as matter of law. In the case of the *Central of Georgia R. Co. v. Foshee,* 129 Ala. 213, in discussing the duty of one traveling on foot, to stop, look and listen before crossing a railroad track, it was said: "It is equally clear on principle and authority that this duty must be performed at such time and place with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. He must stop so near to the track and his survey by sight and sound must so immediately precede his efforts to cross over it as to preclude the injection of an element of danger from an approaching train into the situation between the time he stopped, looked and listened, and his attempt to proceed across the track. If he stops so far from the railway as that a train which could not be seen from that point could and does reach the crossing by the time he has traversed the intervening distance, and gotten on the track, he negli-

[Burns v. Louisville & Nashville Railroad Company.]

gently contributes to the resulting collision and injury."
And again in the same case, page 214, it was said: "There
is evidence from which it might be inferred that she [re-
ferring to plaintiff's intestate in that case] did not see
or hear the train, and, without stopping to look and lis-
ten at the proper time and place, or at all for that mat-
ter, went upon the track in ignorance of its approach.
That by stopping and looking and listening she could
have ascertained that the train was approaching and
was dangerously near is entirely clear on the evidence.
Indeed, it is not possible to conceive that any foot travel-
er need or could with proper use of his senses ever go
upon a railway in ignorance of the approach of a train
sufficiently near to strike him before he crosses over it.
No curve in a deep cut that a train can be operated up-
on, can be so acute as to deprive him of the opportunity
while standing beside the track to refrain from attempt-
ing to cross in front of it. On this aspect of the evidence
the intestate was as a matter of law unquestionably
guilty of negligence in attempting to cross the track
without stopping and looking and listening for the train
that killed her." It is perfectly clear from the undis-
puted evidence as to the distances between the several
tracks, and as to the unobstructed view after clearing
the tracks upon which the cars were stored, to one going
from west to east as the plaintiff was going, that if there
were no cars on the "southbound" main line, and this
fact is hypothesized in the charge, there was a "proper
time and place" in the intervening space between where
the plaintiff first stopped, looked and listened, and the
point at which he was struck by the train, where he
could, by the exercise of ordinary care in the use of his
senses, have known of the approaching train and have
avoided the accident. It is equally clear that in his fail-
ure to stop, look and listen "at such time and place with
reference to the particular situation" as would have en-
abled him to accomplish the purpose the law has in view
in imposing this duty upon him, he was guilty of con-
tributory negligence.

The evidence further was without dispute, that the

presence and peril of the plaintiff at the time of the injury, was unknown to defendant's agents in control of the train, and therefore there is no room for the application of the principle of responsibility for negligence occurring subsequent to plaintiff's negligence. Our conclusion is that the court committed no error in the giving of the charge, and the judgment will be affirmed.