(96 South. 358)

**CUNNINGHAM HARDWARE CO. v. LOUISVILLE & N. R. CO.   (1 Div. 272.)**

(Supreme Court of Alabama.   April 26, 1923.)

**1. Evidence ☞16—5/10/21 judicially known to have been May 10, 1921.**

5/10/21 is judicially known to have been the 10th day of May, 1921.

**2. Railroads ☞347(11)—Evidence of custom to maintain flagman held competent.**

Where the driver of plaintiff's automobile truck testified that he drove on defendant's track as soon as he received the flagman's signal to go ahead, and that he had theretofore made the crossing many times, it was competent for plaintiff to show whether it was customary to maintain a flagman or watchman at the crossing.

**3. Evidence ☞473—Witness' statement that flagman "waved board to go ahead" held to be statement of collective fact.**

In action for damage to a truck caused by a crossing collision, statements of the truck driver that the flagman "waved the board to go ahead, and I went ahead," was not a mere conclusion, but a statement of collective fact that was permissible.

**4. Witnesses ☞37(1)—Witness held competent to state result of observations made immediately after crossing collision.**

Where it was shown that no change had been made at a railroad crossing from the time of a collision to the time of measurements taken by claim agent for railroad, having shown a knowledge of the location and condition of tracks there, there was no error in permitting his testimony as to distances between tracks.

**5. Pleading ☞180(1) — Respective pleadings must support foregoing pleading.**

Respective pleading must support the foregoing pleading of the pleader and not make departure therefrom.

**6. Pleading ☞370—Issue may be taken on insufficient plea.**

Issue may be taken on an insufficient or immaterial plea.

**7. Railroads ☞320—Locomotive engineer held not guilty of actionable negligence at crossing.**

Where the engineer on a locomotive going six miles an hour received a stop signal as his engine was approaching a street 60 feet away and immediately applied his emergency brakes, which were in good condition, but was unable to stop and avoid a collision with a truck, he was not guilty of actionable negligence.

**8. Appeal and error ☞1029—Error in charges harmless in view of defendant's right to an affirmative charge.**

Any error in rulings was harmless, where, had they been different, defendant would still have been entitled to the affirmative charge.

**9. Railroads ☞331(3)—Charge on employment of acting flagman held erroneous.**

In action for injuries at a crossing, a charge placing on the traveler the burden of knowing whether one acting as flagman was so acting under a contract of employment before the traveler is authorized to rely on the signal given by the acting flagman is erroneous.

**10. Railroads ☞350(29)—Contributory negligence in obeying flagman's signal held for jury.**

Whether a truck driver was negligent in obeying a signal from one acting as flagman *held* question for the jury.

**11. Railroads ☞331(3)—Traveler not required to stop, look, and listen before obeying invitation to cross.**

Where a flagman at a crossing invites a person to proceed across the track, the latter is under no duty to stop, look, and listen before obeying such invitation or signal.

**12. Railroads ☞327(1)—Duty to stop, look, and listen.**

It cannot be affirmed as matter of law in every case and under all circumstances that there is an absolute duty to stop, look, and listen before a traveler may go on a railroad crossing.

**13. Railroads ☞327(8)—Duty to stop, look, and listen before going on adjacent track.**

Where several railroad tracks lie alongside, or immediately adjacent, a traveler about to cross may be said generally to have exercised due care and prudence if he stopped, looked, and listened before venturing on the first track, and is not required as matter of law to repeat the precaution at each track.

**14. Railroads ☞327(5)—Duty to look in every direction.**

It is the duty of one intending to cross a railroad track at a public crossing or elsewhere, not being invited by defendant to cross, to look in every direction the rail runs, and one failing to take this precaution is guilty of negligence if other circumstances are such as so to charge him therewith.

**15. Railroads ☞350(5)—Flagman's negligence held for jury.**

In action for damages to motor truck caused by collision, *held*, on conflicting evidence as to whether the flagman negligently signaled the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

'driver to proceed across the tracks, that defendant was not entitled to the general affirmative charge.

**16. Trial ☞ 140(1)—Different inferences from direct and cross examination evidence held not to warrant affirmative charge.**

Notwithstanding that on cross-examination witness made use of expressions from which a different inference could be drawn from that of direct, it did not warrant excluding his testimony and giving the affirmative charge.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by the Cunningham Hardware Company against the Louisville & Nashville Railroad Company for damages to a motor truck. From a judgment for defendant, plaintiff appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Reversed and remanded.

Charge 9, given for defendant, reads:

"(9) The court charges the jury that if you believe from the evidence in this case that the watchman at said crossing was not employed by the defendant in this case, but was merely placed there by his father during his father's absence, then you cannot find for the plaintiff under counts A and B of the complaint."

Inge & Bates and Vincent F. Kilborn, all of Mobile, for appellant.

A witness may testify whether or not it was customary to maintain a flagman or watchman at a railroad crossing. L. & N. R. Co. v. Stewart, 128 Ala. 313, 29 South. 562; L. & N. R. Co. v. Webb, 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; A. G. S. v. Anderson, 109 Ala. 299, 19 South. 516. The statement by a witness that the flagman waved the board to go ahead is not an objectionable conclusion, but is an inference or impression from collective facts, or a shorthand rendition of facts. Shafer & Co. v. Hausman, 139 Ala. 237, 35 South. 691; Torrey v. Krauss, 149 Ala. 200, 43 South. 184; Central of Georgia R. Co. v. Hyatt, 151 Ala. 355, 43 South. 867; So. Ry. v. Weatherlow, 153 Ala. 171, 44 South. 1019; St. L. & St. F. v. Brantley, 168 Ala. 579, 53 South. 305; Ala. Min. R. Co. v. Jones, 114 Ala. 519, 21 South. 507, 62 Am. St. Rep. 121; Eureka Co. v. Bass, 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; McVay v. State, 100 Ala. 110, 14 South. 862; Rollings v. State, 136 Ala. 126, 34 South. 349; E. T., V. & G. R. Co. v. Watson, 90 Ala. 41, 7 South. 813; Busbee v. Thomas, 175 Ala. 423, 57 South. 587; Woodstock Iron Co. v. Roberts, 87 Ala. 436, 6 South. 349; Pa. Cas. Co. v. Perdue, 164 Ala. 508, 51 South. 352; B. R., L. & P. Co. v. Long, 5 Ala. App. 510, 59 South. 382; B. R., L. & P. Co. v. Saxon, 179 Ala. 136, 59 South. 584; Perrine v. So. Bitulithic Co., 190 Ala. 96, 66 South. 705. The driver of a vehicle is not required to stop, look, and listen, where the

railroad's flagman signals him to cross the track. L. & N. R. Co. v. Stewart, supra; A. G. S. v. Anderson, supra; L. & N. R. Co. v. Webb, supra.

Smiths, Young, Leigh & Johnston, of Mobile, for appellee.

Where a successful party is entitled to the affirmative charge, errors in other matters arising on the trial are harmless. Appling v. Stovall, 123 Ala. 398, 26 South. 212; Bowling v. M. & M. R. Co., 128 Ala. 550, 29 South. 584; L. & N. R. Co. v. Johnson, 128 Ala. 634, 30 South. 580; Sands v. L. & N. R. Co., 156 Ala. 323, 47 South. 323; Glass v. M. & C. R. Co., 94 Ala. 581, 10 South. 215; Travis v. A. G. S., 199 Ala. 38, 73 South. 983. Defendant was entitled to the affirmative charge on counts 4, A, and B. C. of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; Bates v. L. & N. R. Co., 184 Ala. 655, 64 South. 298; L. & N. R. Co. v. Turner, 192 Ala. 392, 68 South. 277; Bailey v. So. Ry., 196 Ala. 133, 72 South. 67; A. C. L. R. Co. v. Jones, 202 Ala. 222, 80 South. 44; Hines v. Cooper, 204 Ala. 535, 86 South. 396; Fayet v. St. L. & S. F. R. Co., 203 Ala. 3, 81 South. 671.

THOMAS, J. The suit is for damages to a truck caused by collision with defendant's engine at a street crossing.

Count 4 predicates liability on facts tending to show that defendant's servant so negligently operated the engine in question as to collide with the truck of plaintiff at the time and place indicated. In counts A and B liability is sought to be predicated upon the facts that defendant maintained a flagman at the crossing and at the time the accident occurred; that said flagman signaled plaintiff's driver to or upon the crossing, which signal plaintiff's driver relied upon, proceeded on the crossing where the collision occurred, and, as a proximate result of which plaintiff's property was damaged, for which the suit was brought.

To count 4 defendant filed pleas of the general issue and special pleas B, C, and D of contributory negligence for failure of the driver of the truck to stop, look, and listen before going upon the crossing. To counts A and B, in addition to the general issue and foregoing special pleas, defendant further pleaded specially that plaintiff's driver, operating the truck within the line and scope of his duties, negligently failed to exercise his senses of sight and hearing before going upon the crossing, and thereby contributed to his injury.

[1] The only replications found in the record are filed of date 5/10/21, which we judicially know to have been the 10th day of May, 1921 (Sovereign Camp, W. O. W., v. Reed, 208 Ala. 457, 94 South. 910), and were "to the first pleas filed by the defendant" of date (4/27/21) April 27, 1921. The complaint then

consisted only of count 1. Said pleas, which said replication was intended to answer, were of contributory negligence for failure of the driver to stop, look, and listen. The replication was that—

"Plaintiff's automobile was going east on Eslava street, a public street in the city of Mobile, Ala., and that just north of Eslava street and close to the track upon which said locomotive was approaching Eslava street, from the north, there was a cattle pen and small house which obstructed the view of a person approaching the said track on Eslava street in going east on Eslava street, so that such person could not see a locomotive approaching Eslava street from the north, and that by reason thereof the driver of the plaintiff's automobile could not see the approaching locomotive."

The demurrer to the replication was overruled (May 10, 1921). Thereafter defendant had leave of the court to file additional pleas on October 5, 1921, and the complaint was amended by adding count 4 (and 5), to which defendant replied with pleas of the general issue and the special pleas B, C, and D. Thereafter the complaint was amended by the addition of counts A and B, to which said pleas were refiled on January 13, 1922. The trial was had upon counts 4, A, and B, upon the general and special pleas stated, and to which no replication was filed.

[2] Several assignments of error are predicated on rulings in the rejection and admission of evidence. Witness Powell testified that, as plaintiff's agent, he was driving the truck in question at the time of the collision; that there was a flagman "standing off" (near the crossing) talking to a lady, and when he blew the horn on his car, for signal, the flagman "motioned" him to "go ahead," and in response thereto he drove upon the track as soon as he received the signal from the flagman to "go ahead towards the river, the direction in which he was going." Witness then stated that he had theretofore made that crossing many times, and was asked: "Did you know whether it was customary to maintain a flagman there?" Defendant's objection to the question as immaterial and irrelevant was sustained, and plaintiff duly reserved an exception to this ruling. It is competent to show whether or not it was customary to maintain a flagman or watchman at a railroad crossing. B'ham Southern R. Co. v. Harrison, 203 Ala. 284, 292 (11), 82 South. 534; L. & N. R. Co. v. Stewart, 128 Ala. 313, 329, 29 South. 562; Central of Ga. R. Co. v. Stephenson, 189 Ala. 553, 66 South. 495; A. G. S. R. Co. v. Anderson, 109 Ala. 299, 19 South. 516; L. & N. R. Co. v. Webb, 90 Ala. 185, 8 South. 518, 11 L. R. A. 674. Under the witness' evidence that he had theretofore frequently passed over this crossing—"made that crossing many times"—it was error to reject the proffered evidence to the effect that it was customary for defendant to maintain a flagman at the crossing before and to the time of the collision.

[3] On cross-examination Powell was asked, "You did not take the time or pains to look to see whether he had the go sign to you or the stop sign to you?" and replied, "I looked at it, but he waved it so quick I didn't see." Witness being then asked, "You didn't notice?" answered, "I could not tell, because he waved the board to go ahead, and I went ahead." The bill of exceptions recites that defendant moved to exclude the statement of the witness that "he waved the board to go ahead," which motion was granted, and plaintiff duly reserved an exception to this ruling. The court instructed the jury that this witness' conclusion that a certain signal meant to go ahead was not binding on them. This statement of fact by the witness, that "the flagman waved the board to go ahead," was not a mere conclusion, but was the statement of a collective fact that was permissible. Standard Cooperage Co. v. Dearman, 204 Ala. 553, 555, 86 South. 537; B'ham & A. R. Co. v. Campbell, 203 Ala. 296, 298, 82 South. 546; Porter v. L. & N. R. Co., 202 Ala. 139, 141, 79 South. 605; L. & N. R. Co. v. Hayward, 201 Ala. 9, 75 South. 22; Perrine v. Southern Bitulithic Co., 190 Ala. 96, 66 South. 705; Pope v. State, 174 Ala. 63, 57 South. 245; Penn. Casualty Co. v. Perdue, 164 Ala. 508, 51 South. 352; St. L. & S. F. R. R. Co. v. Brantley, 168 Ala. 579, 53 South. 305; Southern Ry. Co. v. Weatherlow, 153 Ala. 171, 44 South. 1019; B'ham Southern R. Co. v. Harrison, 203 Ala. 284, 82 South. 534; L. & N. R. Co. v. Williams, 183 Ala. 138, 145, 62 South. 679, Ann. Cas. 1915D, 483; Central of Ga. Ry. Co. v. Hyatt, 151 Ala. 355, 43 South. 867; Torry v. Krauss, 149 Ala. 200, 43 South. 184; Shafer & Co. v. Hausman, 139 Ala. 237, 35 South. 691; Rollings v. State, 136 Ala. 126, 34 South. 349; K. C., M. & B. R. Co. v. Weeks, 135 Ala. 614, 34 South. 16; Busbee v. Thomas, 175 Ala. 423, 57 South. 587; Ala. Mineral R. Co. v. Jones, Adm'r, 114 Ala. 519, 21 South. 507, 62 Am. St. Rep. 121; McVay v. State, 100 Ala. 110, 14 South. 862; B'ham Min. R. Co. v. Harris, 98 Ala. 326, 336, 13 South. 377; E. T. V. & G. R. Co. v. Watson, 90 Ala. 41, 7 South. 813; Woodstock Iron Co. v. Roberts, 87 Ala. 436, 6 South. 349; Woodstock Iron Co. v. Reed & Partlow, 84 Ala. 493, 4 South. 369; Eureka Co. v. Bass, 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; Hood v. Disston, 90 Ala. 377, 7 South. 732; Turnley v. Hanna, 82 Ala. 139, 2 South. 483; Elliott v. Stocks, 67 Ala. 290.

[4] The defendant's witness Jenkins testified that he was its claim agent and was at the crossing on "the day of the collision, and * * * the morning of the trial"; that he went to the place of collision about an hour after the same had happened, and was familiar with the "lay of the tracks" at that point. Thereupon the witness was asked,

"Are you familiar with that situation down there, the lay of the tracks?" and answered, "Yes, sir," and testified that the tracks were the same at the time of the accident and immediately thereafter as at the time he "measured them." Witness was then asked, "Do you know what the distance was between the south-bound main line and the first track west of that?" Plaintiff's objection, being overruled and due exception reserved, the witness answered:

"* * * It measures eight feet from rail to rail; that is, the west rail of the south-bound main and the east rail of what is known as the lead track."

There was no error in this. The witness, having shown a sufficient knowledge of the location and condition of the tracks in question, and the same not having been changed from the time of the accident to the time of the measurement, was, therefore, prepared to speak of the result of his observations of the conditions, locations, and measurements made by him immediately after the accident.

It is apparent that reversible error has intervened, unless the defendant was entitled to the general affirmative charge as to each count, and the rulings complained of could not have altered the result, even if they had been otherwise. Such is the rule where the error complained of is without injury or cannot in the remotest degree tend to produce a conflict or an adverse inference to a contrary conclusion. Travis v. A. G. S. R. Co., 199 Ala. 38, 73 South. 983; Sands v. L. & N. R. Co., 156 Ala. 323, 47 South. 323; Bowling v. M. & M. Ry. Co., 128 Ala. 550, 556, 29 South. 584; L. & N. R. Co. v. Johnson, 128 Ala. 634, 638, 30 South. 580; Hill v. McBryde, 125 Ala. 542, 28 South. 85; Glass v. Meyer, 124 Ala. 332, 26 South. 890; Glass v. M. & C. R. Co., 94 Ala. 581, 10 South. 215.

It is necessary that we ascertain whether or not the affirmative charge should have been given at defendant's request as to counts 4, A, and B. The gravamen of count 4 is:

"* * * On or about, to wit, the said 11th day of January, 1921, the defendant, through its servants, agents, and employees in charge of one of defendant's steam engines, and while acting within the scope of their duties as such servants, agents, or employees of the defendant, so negligently operated a steam engine, the property of the defendant, that it struck, ran upon, or against a motor truck, the property of the plaintiff, and which was being driven east on the said Eslava street by an agent, servant, or employee of the plaintiff who was then and there discharging his duties as such agent, servant, or employee of the plaintiff."

To this count were filed pleas of the general issue, and of contributory negligence—whether or not plaintiff's driver stopped, looked, and listened before he went upon the track. Under such theory of pleading, as to count 4, the alleged negligence of the flagman became immaterial, because liability thereunder was not predicated in the first instance (count 4) upon his negligence, nor was the act of the flagman at the crossing, inviting the plaintiff's driver to proceed, set up by way of confession and avoidance to pleas treated as answering the fourth count.

[5-7] It is required that respective pleading must support the foregoing pleading of the pleader, and not make a departure therefrom. Ex parte Hines, Director General, 205 Ala. 17, 20, 87 South. 691. However, parties may take issue upon an insufficient or immaterial plea. Under count 4, and pleas thereto, the issue as to the defendant's servant or agent operating the engine was whether he was guilty of actionable negligence; if so, then whether or not plaintiff's driver failed to stop, look, and listen before going upon the track. If he was so derelict in his duty and guilty of failure to exercise the prudence required by the circumstances, the same was the proximate cause of the collision. Bailey v. Southern R. Co., 196 Ala. 133, 72 South. 67. If the evidence failed to show actionable negligence on the part of the engineer, or showed contributory negligence on the part of the plaintiff's agent, defendant was entitled to the affirmative charge as to count 4. The testimony of the engineer was that he could not see the point of accident, but that, within 50 or 60 feet of Eslava street, he received the cry or signal to stop, and immediately threw on his emergency brakes, as his engine proceeded about six miles an hour; that emergency brakes on an engine do not take effect instantaneously, requiring five to seven seconds to become effective; that he did all in his power, as a skillful engineer, to stop the engine, and with brakes that were in "first-class condition"; that running the engine as he was, and under the circumstances, he could not have stopped sooner; and that with every condition favorable, as it was, after he was notified of the necessity of stopping, or of the danger, he was or would have been unable to stop the engine and avoid the collision. The defendant was entitled to the affirmative charge under the fourth count. Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 218, 27 South. 1006.

[8] It is not, therefore, necessary to pass upon the specific question of error vel non in the giving of charges 6, 7, 12, 13, 15, 19, 25, and 26, since, if it be conceded the giving of these charges was erroneous, the defendant was entitled to the affirmative charge as to count 4, as we have indicated, and the giving of said charges (if error) was error without injury. It will be noted that said charges are restricted to count 4 specifically, or by its subject-matter. Travis v. A. G. S. R. Co., 199 Ala. 38, 73 South. 983; Sands v. L. & N. R. Co., 156 Ala. 323, 47 South. 323; Bowling v. M. & M. Ry. Co., 128 Ala. 550, 29

South. 584; L. & N. R. Co. v. Johnson, 128 Ala. 634, 30 South. 580; Glass v. M. & C. R. Co., 94 Ala. 581, 10 South. 215; Jefferson v. Republic I. & S. Co., 208 Ala. 143, 93 South. 890.

[9, 10] There was error in giving defendant's charge No. 9. It was positively erroneous, in placing the burden on every one passing the railroad crossing of knowing or ascertaining whether he who was acting as flagman thereat was so acting under a contract of employment with defendant, before such person was authorized to rely upon the signal given by such acting flagman. If a flagman had customarily been stationed and acted for defendant at that crossing, and the fact was known to the plaintiff's driver, or defendant had so long maintained the same to warn travelers of the approach of engines or trains and of the danger of attempting to cross, that travelers (including plaintiff's agent in question) have relied, and are accustomed to rely, thereon, in the exercise of due care, nothing of contradictory indication appearing, the failure of the company in that behalf would not wholly excuse the traveler approaching such crossing from the exercise of reasonable care and caution—such as would ordinarily be exercised by a careful and prudent man, under similar circumstances. Such knowledge of warnings or reliance thereon would "have the effect, in the case of a traveler meeting his death at such crossing [without such warning], to invoke the presumption that such traveler was in the exercise of reasonable care and caution immediately before and at the time of the collision, unless the other evidence should rebut that presumption." Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 292, 82 South. 534, 542. That is to say, at such place and under such circumstances, even if the acting flagman was a volunteer attempting to guard the crossing without authority of the railroad company, a jury question would be presented—whether or not the driver of the truck was negligent in obeying the signal of an acting flagman.

Counts A and B predicate liability on the fact that a flagman stationed at the crossing negligently signaled plaintiff's agent to proceed thereon, who, relying on such signal, went upon the crossing, and received the injury complained of. To said counts, beside the general issue, defendant pleaded specially contributory negligence, as we have indicated. Whether or not these pleas are properly interposed to said counts is not now for consideration, since appropriate demurrers were not interposed.

[11] Appellant urges that, on account of the flagman inviting plaintiff's truck driver across the track, he was exculpated from the duty imposed by the general rule of "stop, look, and listen." It will be observed of the special pleas that the duty to stop, look, and listen is not set up, but that the driver failed to stop, look, and listen. Under the decisions of this court, where a flagman, stationed at a crossing, invites a person to proceed across a railroad track, the latter is under no duty to stop, look, and listen before obeying such invitation or signal to cross. Birmingham Southern R. Co. v. Harrison, supra.

In Central of Ga. Ry. Co. v. Hyatt, 151 Ala. 355, 363, 43 South. 867, 870, it was averred and shown that the plaintiff failed to stop, look, and listen, yet it was held a jury question to determine if the failure to do so was the proximate cause of the injury. This decision was rested upon the fact that (without replication to the plea) the evidence showed it was so dark that plaintiff could not see the locomotive which was approaching without a headlight, and there was such noise made by another engine of defendant as to prevent plaintiff's hearing the approaching engine causing the injury and damage. Under such facts, the justice, speaking for the court, said:

"If therefore the train could not have been seen or heard, had the intestate stopped and looked and listened before attempting to cross the track, then a failure on his part to do so cannot be affirmed as the proximate cause of his death."

The effect of the failure to stop, look, and listen at a railroad crossing as negligence has been a fruitful source of discussion. The decisions are not uniform on the question of whether or not the so-called rule for a failure to stop, look, and listen at a railroad crossing for approaching cars, trains, or engines, is a "hard and fast one" and absolute in all cases under all circumstances. 1 A. L. R. 203 et seq. In this jurisdiction it may appear, from such report as is made of two cases (being memoranda), that it has been declared that a person approaching a railroad track at a crossing, and who is about to go upon the same, is under an "absolute duty" to first stop, look, and listen for approaching trains, and the failure to perform this duty makes him guilty of contributory negligence, as matter of law, and precludes recovery. Spradley v. Ala. Midland Ry. Co., 110 Ala. 687 [1896] (memorandum opinion), 20 South. 1022; Hooks v. Huntsville R. L. & P. Co., 147 Ala. 700 [1906] (memorandum opinion), 41 South. 273. The Spradley and Hooks Cases have not been cited by this court. The Hooks Case, as reported in Southern Reporter, was on the authority of Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 212, 214, 27 South. 1006; G. P. R. Co. v. Lee, 92 Ala. 262, 268, 9 South. 230; L. & N. R. Co. v. Webb, 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; Gothard v. A. G. S. R. Co., 67 Ala. 114. These authorities, however, were where the traveler approached the railroad track under ordinary circumstances and conditions. In the Gothard and Webb Cases, supra, the court

used the expressions: "As a general rule," or, "It is generally held," etc., and where exceptional circumstances may exist; and in S. & N. A. R. Co. v. Thompson, 62 Ala. 494, 500, it was held that the traveler had the right to rely on compliance with statutory regulations and on the appearances of the track at the time he was approaching the crossing.

In A. C. L. R. Co. v. Jones, 202 Ala. 222, 80 South. 44, it was declared that when a traveler "can do so" (stop, look, and listen), "it is his absolute duty to observe this salutary rule of self-preservation, regardless of the time or place of crossing or of the schedule or infrequency of passing trains." Thus a question was made in the Jones Case of the absoluteness of the negligence per se rule, and this decision is in line with G. P. R. Co. v. Lee, 92 Ala. 262, 9 South. 230, where the holding was that the so-called negligence per se rule applies, to travelers on foot or in a vehicle, only where the traveler approached the railroad track under ordinary circumstances and conditions, and therefore does not apply where there are exceptional circumstances (deemed sufficient) and where the failure was not the proximate cause of the injury. Such cases are where the traveler was not in position, or had no opportunity, to stop, look, and listen, or to do so would not have been effective, or that he was so incompetent, by reason of physical or mental disability, as not to be able to understand the necessity for doing so. Central of Ga. R. Co. v. Hyatt, 151 Ala. 355, 43 South. 867 (where the accident occurred at night, engine had no headlight, and intestate could not hear because of noise of defendant's other engine); B'ham Ry. L. & P. Co. v. Landrum, 153 Ala. 192, 45 South. 198, 127 Am. St. Rep. 25 (the person injured was an infant less than two years of age); Central of Ga. Ry. Co. v. Jones, 195 Ala. 378, 70 South. 729 (the plaintiff had no control over the driver and no opportunity to comply with the rule); Southern R. Co. v. Hobbs, 151 Ala. 335, 43 South. 844 (where the team was frightened); Central of Ga. Ry. Co. v. Barnett, 151 Ala. 407, 412, 44 South. 392 (usual conditions, yet recognized exceptions). That is to say, the absolute rule does not apply where there are exceptional circumstances justifying the failure, or conditions (not superinduced by plaintiff) were such that it would have availed nothing if the traveler, before crossing, had stopped, looked, and listened (Central of Ga. Ry. Co. v. Hyatt, supra); or where the traveler, by some act or omission of the defendant company, was misled and thrown off his guard and prevented from taking the proper precaution to stop, look, and listen (Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 215, 27 South. 1006; A. G. S. R. Co. v. Anderson, 109 Ala. 299, 19 South. 516; B'ham S. R. Co. v. Harrison, 203 Ala. 284, 82 South. 534; 1 A. L. R. 209;

Union Pac. R. Co. v. Rosewater, 157 Fed. 168, 84 C. C. A. 616, 15 L. R. A. [N. S.] 803, 13 Ann. Cas. 851). Of course, the rule does not apply where the defendant was guilty of willful or wanton negligence. Western Ry. Co. v. Wallace, 170 Ala. 584, 54 South. 533; Burns v. L. & N. R. Co., 136 Ala. 522, 33 South. 891; Central of Ga. Ry. Co. v. Foshee, supra; 1 A. L. R. 203 et seq.

[12] It is therefore settled in this jurisdiction that it cannot be affirmed as matter of law, in every case and under all circumstances, that there is an absolute duty to stop, look, and listen, before a traveler, whether on foot or in a vehicle, may go upon a railroad crossing. This was well stated in L. & N. R. Co. v. Williams, 172 Ala. 560, 578, 55 South. 218, 223, as follows:

"What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, 'stop, look, and listen,' is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of the one passing, with the place of crossing; and he cannot always be said to be guilty of contributory negligence, because he failed to stop, look, or listen at one particular time or place, rather than at another."

See, also, L. & N. R. Co. v. Williams, 183 Ala. 138, 145, 62 South. 679, Ann. Cas. 1915D, 483; Bailey v. Southern R. Co., 196 Ala. 133, 72 South. 67; A. C. L. R. Co. v. Jones, 202 Ala. 222, 80 South. 44; Hines v. Cooper, 204 Ala. 535, 86 South. 396; Hines v. Cooper, 205 Ala. 70, 88 South. 133. The rule that obtains in this state is well stated in Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 215, 27 South. 1006.

[13] It must also follow that where several railroad tracks lie alongside or immediately adjacent, a traveler about to cross the same may be said, generally, to have exercised due care and prudence if he stopped, looked, and listened before he ventured upon the first track, and is not required, as matter of law to repeat the precaution of stopping, looking, and listening at each of the said tracks in succession. Cherry v. La. & Ark. R. Co., 121 La. 471, 46 South. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323. The authorities are to the effect that no hard and fast rule can be laid down as to the duty to stop, look, and listen after entering upon the first of several parallel or immediately adjacent tracks; but that it is usually held to be a question of fact for the jury whether, under all of the circumstances of the particular case, the plaintiff is guilty of contributory negligence in passing across the several or subsequent tracks, without again stopping to look and listen, where such plaintiff had taken the initial precaution to stop, look, and listen immediately or reasonably near to and before coming to or on the first track. L. & N. R. Co. v. Bryant, 141 Ala. 292, 37 South. 370; G. P. R. Co. v. Lee, 92 Ala. 262, 9 South. 230; L. & N. R. Co. v. Loyd, 186 Ala. 119, 129, 65 South.

153; L. &. N. R. Co. v. Stewart, 128 Ala. 313, 318, 330, 29 South. 562; A. G. S. R. Co. v. Anderson, 109 Ala. 299, 300, 304, 19 South. 516; Cherry v. Louisiana & Ark. R. Co., 121 La. 471, 46 South. 596. 17 L. R. A. (N. S.) 505, 126 Am. St. Rep. 323. See, also, K. C., M. '& B. R. Co. v. Weeks, 135 Ala. 614, 620, 34 South. 16. What is such reasonable precaution was dealt with in Southern Ry. Co. v. Irvin, 191 Ala. 622, 68 South. 139, where, adverting to the rule of Central of Ga. Ry. Co. v. Hyatt, 151 Ala. 355, 43 South. 867, it is said:

"It is the duty of the person intending to cross a railway to stop, look, and listen for approaching trains; and this use of the senses must be made within such nearness to the track and under such circumstances as will afford the highly important information to the traveler and operate as the precaution the most ordinary prudence, in such circumstances, suggests; and the duty, unless excused as indicated, is continuing at least to the extent of excluding the injection of an element of danger into the situation between the time he last stopped, looked, and listened and the *time he enters the zone of danger a moving train would create.*" (Italics supplied.)

As to the continuing duty to see that the way is clear, note L. & N. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; L. & N. R. Co. v. Turner, 192 Ala. 392, 68 South. 277.

[14] Another familiar principle is that it is the duty, under ordinary circumstances, of travelers or persons intending to cross a railroad track at a public crossing or elsewhere, not being expressly or impliedly invited by defendant, its agent or servant, to cross, to look in every direction the rail runs, and to listen for approaching trains, and one who fails to take this precaution is guilty of culpable negligence, if the other circumstances are such as so to charge him therewith. L. & N. R. Co. v. Richards, Adm'r, 100 Ala. 365, 13 South. 944; L. & N. R. Co. v. Webb, 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; A. G. S. R. Co. v. Anderson, 109 Ala. 299, 19 South. 516; L. & N. R. Co. v. Stewart, 128 Ala. 313, 29 South. 562; B'ham Southern R. Co. v. Harrison, 203 Ala. 284, 82 South. 534.

[15] A careful examination of the evidence for the respective parties discloses on behalf of plaintiff that when his agent approached the railroad track, driving the truck, and to the crossing where the flagman was, he blew his horn, slowed up, and stopped at a point "about fifteen feet from the railroad track on which the engine was backing"; that he did not see the engine coming on the second or subsequent track; that his view was obstructed by a cattle pen and some empty box cars which were on the first track, and the engine was coming on the track on the "other side of the empty box cars"; that there was a flagman at the crossing "standing off" when plaintiff's agent stopped, and "when he blew" the horn on the truck the flagman told him to go ahead toward the river. Plaintiff's testimony tended to show that the driver of the truck did not hear the engine give any signal of its approach; that he "did not hear any noise from the engine"; and that the tracks of defendant company across Eslava street, at the place of the collision, were imbedded in the street, the point being a public street crossing frequently used by said driver as a part of the general public. There was a tendency of evidence on the part of defendant, in conflict with that of plaintiff, as to the stopping of plaintiff's agent and the giving of signals by the respective parties. It is without dispute that a person was at the crossing in question, before and at the time of the collision, acting as flagman; and there was conflict in the testimony as to whether or not the signal given by such flagman, in response to the approach made by plaintiff's agent to the crossing, was to stop or to proceed upon the crossing. There was a tendency of evidence producing conflict as to whether or not the engine was proceeding with the ordinary or required signals, or what signals were being given.

[16] The fact that, on cross-examination, a witness had made use of expressions from which a different inference could be drawn from that of his direct examination, will not warrant the excluding of the testimony of the witness, and the giving of the affirmative charge. Jones v. Bell, 201 Ala. 336, 77 South. 998. If a jury question is made, it is not destroyed by such conflict. The testimony is without dispute that the tracks of defendant's crossing at Eslava street, where the collision occurred, were more than one in number, and running parallel, or in close proximity to each other; and that the first track, or that on which were the obstructions, in the direction from which plaintiff's agent approached, and that on which the collision occurred, were eight feet apart. Under the conflict in the evidence, we cannot say that the affirmative charge should have been given as to counts A and B.

It is not necessary to consider the other questions presented. They may not recur on another trial.

Reversible error having intervened in the giving of charge 9 at defendant's request, and on the exclusion of evidence, as we have indicated, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.