POLLARD v. BEENE.—95 S. W. (2d) 943.

SAME v. HICKS.

Eastern Section.   December 21, 1935.

Petition for Certiorari denied by Supreme Court, May 2, 1936.

W. H. Watkins, of Chattanooga, for plaintiff in error.
Gus A. Wood, Jr., of Chattanooga, for defendants in error.

PORTRUM, J.   These two cases were consolidated and heard together in the lower court, since the plaintiffs sustained personal injuries in the same accident; each of the plaintiffs recovered a judgment in the lower court as damages for personal injuries sustained in a collision between an automobile in which they were riding and a string of cars operated by the railway company on a grade crossing in the city of Chattanooga.   From the judgments the defendant appealed in error and assigns error upon both cases.

The accident out of which these cases arose occurred at about 9:30 p. m. on August 8, 1933, at a place where the defendant's railroad tracks, eight in number, cross East Twenty-Third street in the city of Chattanooga.   The plaintiff Hooper Beene was operating a 1928 model Chevrolet truck, which belonged to him, traveling in an easterly direction along East Twenty-Third street, approaching the tracks from a westerly direction, the tracks running approximately north and south.   The plaintiff Hicks was a guest and invitee of the plaintiff Beene, and was accompanying him to Ryall Springs to get some boxing equipment which belonged to Hicks, who was a professional boxer.   Neither of the plaintiffs was familiar with the crossing, not having been over it before.

When the plaintiffs reached a point about 100 yards, or a city block, from the west line of the crossing, they noticed a cut of cars and an engine blocking the crossing and traveling southwardly, which was to their right.   When the driver, Beene, first noticed the cut of cars, he took his foot off of his accelerator and applied his brakes and approached the crossing cautiously, reducing his speed

with the intention of stopping before entering upon the crossing, and he brought his car almost to a stop, necessitating starting the car in low gear. There were eight tracks, and the cut of cars was crossing upon the fifth track. When the cars passed over the crossing, the plaintiff saw another automobile upon the opposite side standing with lights burning. W. S. Morgan, foreman of the defendant's switching crew, was standing east of the track on which the defendant's train was switching, at the northern edge of the street, with an electric signal lantern in his hand. There was also a street light hanging over the street at the crossing with a reflector which lighted the crossing but tended to darken the tracks at the sides of the crossing. The street over the crossing was level with the rails and in good condition.

The plaintiffs testify that they slowed down the car almost to a stop about 15 to 30 feet from the first track of the crossing, and, after the string of cars had passed over the crossing, they saw the foreman, W. S. Morgan, turn and make a beckoning sign with his white light to the car awaiting on the east side of the crossing, which signal the driver of this car as well as the plaintiffs construed as a sign for traffic to proceed across the crossing. The foreman then turned and signaled the plaintiffs, and Beene, throwing his car in low gear, proceeded to cross the crossing. The opposite car passed over the track upon which the train was operating and passed the plaintiff just west of the point of the accident, and, as the plaintiffs' car entered upon the fifth track of the crossing upon which the train was operating, Hicks saw the string of cars coming up out of the darkness and cried out, but the plaintiff Beene had not time to extricate his car by driving off of the crossing, and there was a collision. The automobile was carried off of the crossing and down the track for a short distance, and both of the plaintiffs were injured.

The plaintiffs admit that they saw the string of cars pass over the crossing and that they did not look to ascertain the further operation of the switching movement, since the trainman who was standing in the crossing had signaled them to pass; they took no precautions other than to rely upon the signal of the foreman who was upon this crossing in the position of a watchman, and they had a right to rely upon an ordinance passed by the city of Chattanooga for the protection of travelers upon the crossing. This ordinance provides that, when a string of cars passes over the crossing, the train must wait before recrossing the crossing in order to let traffic pass and not obstruct it. Had this ordinance been observed, there could not possibly have been an injury, and it was the duty of the foreman who was admittedly directing the operation of the movement to ascertain if there were traffic upon the street and,

finding traffic there, to permit it to pass before directing the train again over the crossing. The foreman says he was not signaling traffic to cross, but he was signaling the train to recross, and the defendant argues that the plaintiffs were negligent in misconstruing the signals and attempting to cross without looking and acting for their own safety. The law contemplates that the plaintiffs had a right to assume that the trainman, who had taken up the position of a watchman, would perform his duty and not violate the city ordinance so, if there were any misconceived signals, it was primarily the fault of the railway company.

But the evidence shows that the foreman signaled the traffic to cross the street, and the only permissible inference is that, if there was any misconceived signal, the engineer was the guilty party. However, the statement of the plaintiffs that the trainman signaled them across is attacked as incompetent on the ground that it was an erroneous conclusion and it was for the jury to say whether or not the trainman signaled the traffic to cross. The plaintiffs were required to stand before the jury and demonstrate these signals, and there is no attempted description of their movements before the jury in their demonstration in this record. For this reason this court cannot say that it is not proven that the trainman signaled traffic to cross, for, after the demonstration, the interpretation of the signals by the plaintiffs became immaterial, since the jury interpreted the signals from the demonstration for itself.

Upon this state of facts the defendant asked this court for a directed verdict in both cases upon the ground that there is no evidence to support the judgment. As the court has stated, this accident could not have happened but for the violation of the city ordinance by the defendant, and that the plaintiffs had a right to rely upon its observance until put upon notice to the contrary. And it was for the jury to say whether the signal of the trainman was sufficient to put them upon notice, and the court cannot decide this issue of fact. But, in the absence of the ordinance, the plaintiffs had a right to rely upon the signal to cross, and, since the jury was justified in concluding that the signal to cross was made, it became the duty of the railway company to observe its own signal.

"In the case of crossing a railroad track, the look and listen rule is the proper measure of plaintiff's duty under ordinary circumstances; however, circumstances often exist which make the rule inapplicable. . . . But what is due care in the circumstances of the exception is ordinarily a question for the jury." Hurt v. Yazoo & M. V. R. Co., 140 Tenn., 623, 641, 205 S. W., 437, 442; City of Elkins v. Western Maryland R. Co., 76 W. Va., 733, 86 S. E., 762, 1 A. L. R., 198.

We can conceive of no set of circumstances more calculative to

mislead traffic than the signal by a trainman to proceed across the crossing; and, if the traffic did not act upon the invitation, but undertook itself to judge of its own safety and stop because of movement upon the track by an engine and cars, then the delay in clearing the traffic would become annoying and intolerable.

"It cannot be said as a matter of law that one signaled by a crossing flagman to cross the track is thereafter required to stop, look, and listen for trains." Lake Erie & W. R. Co. v. Sanders, 72 Ind. App., 283, 125 N. E., 793.

"Where a flagman at a crossing invites a person to proceed across the track, the latter is under no duty to stop, look, and listen before obeying such invitation or signal." Cunningham Hardware Co. v. Louisville & N. R. R. Co., 209 Ala., 327, 96 So., 358, 359.

"The question of contributory negligence turns on much the same proposition. The driver of the automobile as well as the passengers in it had a right to rely on the flagman to give them correct signals that would be understood by the ordinary person situated as they then were. If this was not done or if wrong and misleading signals were given on which these persons, acting as ordinarily prudent persons under the circumstances would have acted, in fact did rely, then neither the driver of the automobile nor his passengers therein can be held to have been guilty of contributory negligence. In any event it was a question for the jury to determine from all the facts and circumstances in evidence whether defendant in error was at and immediately before the accident in the exercise of due care for her own safety." Deheave v. Hines, 217 Ill. App., 427.

The motion for a directed verdict was properly overruled by the trial court.

■■ There are numerous assignments of error attacking certain excerpts taken from the charge of the court, because the statements in the excerpts are not full enough. The trial judge is not required to qualify every primary statement of the law by stating exceptions which make the rule inapplicable. It is sufficient if the trial judge make a clear statement of the law applicable to the case, and he will not be put in error for not reiterating the qualifications to the rule announced every time he has occasion to mention the rule. We have examined the charge and find it fair; he was not requested by special request to amplify the charge, and, if the defendant wanted an amplification, it should have requested it at the conclusion of the charge.

■■ (The court disapproves of the practice of setting out long excerpts from the charge and pointing out the error as follows: "Because the charge of the court, without adding thereto the additional instructions as set out in the motion for a new trial at page 23 of the transcript, was misleading and confusing to the jury." It is the

duty of the pleader to state the error and not require the court to search for it in the record.)

■ There were several special requests filed and overruled by the trial judge, and his action is assigned as error. We have examined all of these excerpts, and conclude that it would have been improper for the judge to have given them to the jury since he had declined to direct the verdict. These requests detail certain acts and omissions of the plaintiff and designate them as negligent acts, so the only issue left to the jury, had they been given, was the question of the proximate cause. Under the facts of this case it is clearly a question for the jury to say whether the acts and omissions of the plaintiffs were negligent acts, as well as to fix the proximate cause.

■ The plaintiff Hicks was a young man in good health and a pugilist by profession, receiving $75 to $150 per engagement. He was the most severely injured. He received a severe and permanent head injury, which injured the brain cells, with the likelihood of a continued disability. He also received a severe injury to his spinal cord which is permanent in its nature, and an injury to a leg; and as a result of these injuries one side of his body has atrophied to a great extent, making it perceptible to the eye that one side is much smaller than the other. He cannot now engage in his profession and will never be able to do so. He received a verdict of $6,500, and it is said that this amount is excessive. The court takes the view that the recovery is not excessive; this man's injuries to his brain and spinal column were severe and remain to this day serious and permanent. There is a likelihood that these injuries may yet cause his death. It is certain that he can never carry on his profession as a pugilist, and his earning power in this line of endeavor has been destroyed.

■ The plaintiff Beene recovered a judgment of $75 for the loss of his truck; he valued this truck at only $25, and it follows that there is no evidence to support a verdict for more than $25 for the truck. His recovery will be reduced by the sum of $50, but otherwise affirmed.

The judgments of the lower court are affirmed, with costs.

Ailor and McAmis, JJ., concur.