FILKOSKY, ADMR., APPELLEE, *v.* THE PENNSYLVANIA RD. CO., APPELLANT.

(No. 1956—Decided April 11, 1946.)

*Mr. Frank A. Bolton, Mr. Walter U. Bolton* and *Mr. James M. Schaller,* for appellee.

*Messrs. Pomerene & Burns,* for appellant.

SHERICK, P. J. The petition in this case, an action for wrongful death occurring at a street crossing, alleges three specifications of negligence: First, that defendant negligently failed to give any signal of the approaching train; second, that defendant's train was being operated at a high rate of speed, to wit, 60 miles per hour, in violation of the municipal ordinance; and third, that the crossing watchman failed to give decedent any warning or to use the stop sign in his possession to warn her of impending peril.

Defendant's answer is a general denial and an averment that decedent's injuries were caused, or contributed to, by the decedent.

At the conclusion of plaintiff's case defendant moved for an instructed verdict upon the theory that decedent's conduct evidenced contributory negligence which barred recovery. The trial court sustained that motion, a verdict was returned responsive thereto, and judgment was then entered upon the verdict. Thereupon plaintiff moved to set aside the judgment and for a new trial. Whereupon the court reconsidered its prior action, concluded that plaintiff's case should have gone to the jury, and granted a new trial. From that order defendant appeals on a question of law.

A reading of plaintiff's case as made, with the rule in mind that a motion for an instructed verdict must be considered in its most favorable light in favor of him against whom it is directed, discloses that a ringing of a bell or blowing of a whistle may or may not have been given; and that the train was proceeding at a rate of speed of from 25 to 60 miles per hour in violation of a city ordinance.

With respect to the third ground of negligence, the failure of the watchman to give decedent warning, these facts were developed: That there were no lights, gates or bell located at this busy crossing; that defendant did maintain a watchman at this crossing for its own and the public's benefit; and that decedent was familiar with the crossing, having many times driven over it. It is in evidence that the day was dark; that smoke hung low and visibility was poor; and that under usual atmospheric conditions decedent might have seen up the track for a quarter of a mile. It is shown that a yard engine and cut of freight cars had just passed over the crossing, proceeding in the same direction as the oncoming train on another track. It is shown that decedent drove west on Chester street,

which parallels defendant's tracks; that the oncoming train was at decedent's back; that when she reached Cedar street she turned right and stopped. A large truck was in front of her and one behind her, and another car was approaching the cross-over from the north. The operators of those vehicles say that after the switch engine and cut of cars going west had crossed over the intersection the watchman was in his accustomed place on the street with his semaphore in hand, the stop portion down near the ground, and with his other hand he was motioning traffic across; that the first truck crossed over, the decedent was hit, and the second truck was stopped by its driver when only six or seven feet from the track upon which the train was approaching. There is no proof as to whether the decedent looked and listened.

Defendant maintains that decedent's failure to look and listen, when such would have been effective, as is evidenced by a lack of proof to the contrary, establishes contributory negligence as a matter of law, which bars recovery, and that the court was correct in directing a verdict and entering judgment, and wrong in vacating the judgment and granting a new trial. The sufficiency of plaintiff's case is further questioned. That is, it is claimed that the court had improperly admitted evidence of the watchman's direction to cross over, in view of plaintiff's pleading an act of omission and not an affirmative act. The answer to the last claim is that the affirmative fact of the watchman's beckoning the decedent forward is one from which a rather strong and reasonable inference may be drawn that the watchman failed to give her warning of her peril by doing the exact contrary.

The question before this court is: Does the lack of proof that decedent did look and listen bar recovery under these enumerated facts?

The general rule is well recognized that one in

crossing railroads in city streets must stop, look and listen, when such would be effective, before attempting to cross over. In other words, one must exercise all his senses for his own safety, and must, therefore, exercise that degree of care which an ordinary prudent person would exercise in his own behalf. Keeping in mind that this case does not involve safety gates, flasher lights, or sounding gongs, but only the presence of a crossing watchman directing traffic thereon, and known to be there, and in a position to know of and to see approaching trains, the question comes: Should the general rule apply?

It is said in 44 American Jurisprudence, 821, that:

"The general rule seems to be that the traveler is relieved partially at least of the duty of exercising care in going upon the crossing. The flagman by reason of his situation is better able than the traveler to judge when it is safe to cross the tracks. It is his duty to give timely warning of the near approach of trains, and the public have a right to rely upon a reasonable performance of that duty. * * * There are, however, numerous decisions to the effect that a signal to cross given by a flagman does not excuse the traveler from the duty to look and listen, but merely exacts of him a less degree of care in looking out for trains. It cannot be said as a matter of law that the plaintiff in such a case may rely upon the flagman; neither can it be said, as a question of law, that his failure to look or listen is not contributory negligence. It is a question of fact, to be determined by the jury."

Many authorities from numerous jurisdictions adopt that view in such cases. In *Kasky* v. *B. & O. Rd. Co.*, 23 Ohio App., 185, a case in which there were open gates and a watchman, the court applies the exception to the general rule. Again, in *Thomas* v. *Penna. Rd. Co.*, 70 Ohio App., 191, 45 N. E. (2d), 776, the exception

is examined and followed. It is said in the second and third paragraphs of the syllabus:

"2. Where a crossing watchman, standing at his post in full view of a truck driver on the highway approaching the crossing, does not at any time raise his semaphore or give any warning of an approaching train, the truck driver's view of the tracks in one direction is impaired by trees, brush and poles, and no whistle or bell on an approaching train is sounded, the truck driver is not guilty of contributory negligence as a matter of law in relying upon the crossing watchman to signal in case of danger from approaching trains.

"3. The watchman's conduct in such case, in standing at the crossing in full view of approaching motorists, with his stop sign in his hand but not raised, and not giving any signal to stop or indication that there is danger, is an invitation for the truck driver to cross the tracks."

In the case before this court there were poles, the presence and noise of a switching train, trucks and other traffic, a complete stop by the motorist, and poor visibility, all coupled together with a beckoning by the watchman for traffic to proceed. We think that, from all surrounding circumstances, the question of contributory negligence was one of fact for the jury and not one of law for the court.

The case of *Cleveland, C., C. & I. Ry. Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321, recently reviewed and considered in *Toledo Term. Rd. Co.* v. *Hughes,* 115 Ohio St., 562, 154 N. E., 916, and *Lohrey* v. *B. & O. Rd. Co.,* 131 Ohio St., 386, 3 N. E. (2d), 54, may be pursued with profit. Those cases have to do with open and closed gates and sounding targets. It is held in the *Hughes case* that:

"A traveler approaching a railroad crossing at

which he knows an automatic signal is maintained, while entitled to place some reliance upon the indication of safety which silence of the signal implies, is nevertheless bound to use such care in addition as an ordinarily prudent man would use under such circumstances.''

If a traveler may place ''some reliance'' on such devices, then surely he may place greater confidence in a watchman placed there by a railroad company for protection of the public. Automatic devices are usually not mechanically perfect. They may at times get out of order and fail to function properly. But when a human agency in a position to exercise all his faculties better than an approaching traveler, and with general knowledge of arrival time of fast trains, and placed there for the benefit of the public, waves travelers an invitation or direction to cross, and is known by the traveler to be placed there for direction of traffic, then it ought to be the rule that the motorist may place a greater degree of reliance on the flagman. We do not mean to say that the traveler may place full reliance on the flagman, but that his degree of care for his own safety is but proportionately lessened.

A search of the authorities from sister states discloses that even the courts of Pennsylvania have at times departed from the hard-and-fast rule of stop, look and listen. Practically every jurisdiction applying that rule has held that the rule is not absolute. See 1 A. L. R., 213.

When the act or omission of a railway company misleads the traveler and throws him off his guard, this court is of the opinion that the rule stated in *Cunningham Hdw. Co.* v. *L. & N. R. Co.*, 209 Ala., 327, 96 So., 358, ought to apply. Therein it is held that where a railroad flagman duly stationed at a crossing invites a person to proceed across, the latter

is not guilty of negligence *per se* in not stopping, looking and listening before obeying the signal to cross.

A goodly number of like holdings may be found. In the present instance the traveler did stop and stood there until the signal to cross was given. In such a case this court holds that under such circumstances the question ceases to be one of law and becomes one of fact for the jury to determine.

It follows that the trial court was right in its reconsidered judgment, which is affirmed.

*Judgment affirmed.*

PUTNAM and MONTGOMERY, JJ., concur.